**Larry JOHNSON and Love Fellowship Church, Inc., Appellants,**

v.

**Bishop B.W. OLIVER, New Covenant Pentecost Church, Inc., and Evangelist Holy Temple, Appellees.**

No. 05–06–01597–CV.

Court of Appeals of Texas, Dallas.

April 9, 2008.

Walter L. Irvin, Dallas, for Appellants.

Bishop B.W. Oliver, Dallas, pro se.

Amy L. Saberian, George & Brothers, LLP, Austin, for Appellees.

Before Justices RICHTER, FRANCIS, and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

This is an appeal from a final judgment rendered after a non-jury trial. In four points of error, appellants argue that the trial court awarded more relief than was requested in appellees' petition and that the evidence is insufficient to support certain parts of the judgment. We modify the trial court's judgment and affirm as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellee Bishop B.W. Oliver is the "overseer and presiding officer" of appellees New Covenant Pentecost Church, Inc. (New Covenant) and Evangelist Holy Temple. Appellant Larry Johnson is Oliver's stepson and the "founder and agent" of appellant Love Fellowship Church, Inc. (Love Fellowship).

Appellees sued appellants alleging that Johnson fraudulently transferred title to three properties owned by New Covenant. Appellees asserted multiple causes of action and sought a declaratory judgment and attorneys' fees. Oliver testified at

trial that Johnson also took a bus belonging to Evangelist Holy Temple. The trial court awarded appellees (1) $12,600, as benefit-of-the-bargain damages for the loss of a sale of one of the properties resulting from a cloud on the title to that property created by appellants; (2) prejudgment interest on the $12,600; (3) a declaratory judgment that cleared title to the other two properties at issue and ordered Johnson or Love Fellowship to sign warranty deeds disclaiming ownership of those properties; (4) specific performance and costs in the event that Johnson or Love Fellowship did not sign the warranty deeds; (5) an injunction prohibiting appellants from attempting to sell or transfer any property owned by appellees; (6) $3,500, "as compensation for the bus taken by [appellants]"; (7) prejudgment interest on the $3,500; (8) $547.72 in court costs; (9) $24,611 in attorneys' fees; and (10) post-judgment interest "on the entire Judgment." The trial court denied appellants' motion for new trial. This appeal followed.

### ISSUES RAISED ON APPEAL

Appellants raise four issues on appeal. In their first issue, appellants argue that the trial court erred in awarding appellees $3,500 for the bus because "appellees' original petition did not include allegations of conversion of a bus by appellant[s]." In their second issue, appellants argue that there was no evidence to support the trial court's award of $24,611 in attorneys' fees. In their third issue, appellants argue that there was no evidence to support the trial court's award of $12,600 as benefit-of-the-bargain damages. In their fourth issue, appellants argue that there was no evidence to support the trial court's award of $3,500 for the bus.[1]

---

1. In their "issues presented" summary at the beginning of their brief, appellants also state that there was "factually insufficient evidence" to support

in issues two through four that there was "factually insufficient evidence" to support

## STANDARD OF REVIEW FOR LEGAL SUFFICIENCY OF THE EVIDENCE AFTER A BENCH TRIAL

In a bench trial where no findings of fact or conclusions of law are requested by the parties or filed by the trial court, the judgment implies all findings of fact necessary to support it. *See, e.g., N.Y. Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 205 (Tex.App.-Dallas 1993, no pet.) (citing *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984)). If the appellate record includes a reporter's and clerk's record, those implied findings are not conclusive and may be challenged for legal and factual sufficiency on appeal. *See, e.g., In re Estate of Clark*, 219 S.W.3d 509, 512 (Tex.App.-Tyler 2007, no pet.) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)).

When an appellant challenges the legal sufficiency of the evidence to support a finding on which it did not have the burden of proof at trial, it must demonstrate on appeal that no evidence exists to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Brockie v. Webb*, 244 S.W.3d 905, 909 (Tex.App.-Dallas 2008, no pet.). We review the record to determine whether any evidence supports the challenged finding. *Brockie*, 244 S.W.3d at 909. If more than a scintilla of evidence exists to support the finding, the legal-sufficiency challenge fails. *Id.* (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)).

## ANALYSIS

### A. The Award of Damages for the Bus

■ In their first issue, appellants argue that the trial court erred in awarding damages for the bus that was taken because the bus was not mentioned in appellees' petition and Texas Rule of Civil Procedure 301 requires judgments to conform to the pleadings. Appellees argue that the judgment is proper because the issue of the bus was tried by consent. We agree with appellees.

■ A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating that the parties understood that the issue was in the case, and the other party fails to make an appropriate complaint. *See* Tex.R. Civ. P. 67; *Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d 301, 309 (Tex.App.-Dallas 2006, no pet.). To determine whether an issue was tried by consent, the reviewing court must examine the record, not for evidence of the issue, but rather for evidence of trial of the issue. *Emerson Elec. Co.*, 201 S.W.3d at 309.

It is undisputed that the bus is not mentioned in appellees' petition. However, there was testimony about the bus at trial. Oliver testified that Johnson took a bus belonging to Evangelist Holy Temple, and that the bus was valued at about $3,500. Johnson did not object to this testimony and later acknowledged that he had possession of the bus—first stating that he "purchased the bus in an auction for $3,000," and later stating that he "bought the bus from the day care." We

---

the awards of damages and attorneys' fees. But in the remainder of their brief, appellants only cite authority and argue that there was "no-evidence," which is a legal-sufficiency challenge. *See State v. Cent. Expressway Sign Assocs.*, 238 S.W.3d 800, 807 (Tex.App.-Dallas

August 31, 2007, pet. filed) (when party sets forth only no-evidence complaint, party challenges only legal sufficiency of evidence). Consequently, we address them as legal-sufficiency complaints.

conclude that the issue of the bus was tried by consent. We overrule appellants' first issue.

■■■ Appellants' fourth issue also concerns the bus. Appellants argue that the evidence is insufficient to support an award of $3,500 as damages for the bus because appellees "presented no evidence of title to the bus." But appellants have not cited any authority to support their argument. Consequently, they have not sufficiently briefed this argument for appellate review. *See* TEX.R.APP. P. 38.1; *Ratsavong v. Menevilay*, 176 S.W.3d 661, 666 (Tex.App.-El Paso 2005, pet. denied) (failure to cite authority in support of contention constitutes waiver of issue on appeal). Additionally, although Johnson contended that he bought the bus, Oliver testified without objection that Evangelist Holy Temple owned the bus. We conclude that Oliver's testimony is more than a scintilla of evidence to support the implied finding that Evangelist Holy Temple owned the bus. We overrule appellants' fourth issue.

## B. The Award of Attorneys' Fees

In their second issue, appellants argue that there is no evidence to support the award of attorneys' fees. In response, appellees argue that the evidence is legally sufficient to support an award of $23,166, which is $1,445 less than the amount awarded.

■■■ The trial court is entrusted with the discretion to award attorneys' fees under the Uniform Declaratory Judgments Act, "subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). There are several factors a trial court should consider in determining the amount of reasonable attorneys' fees to award. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Hays & Martin, L.L.P. v. Ubinas–Brache*, 192 S.W.3d 631, 636 (Tex. App.-Dallas 2006, pet. denied). But a trial court is not required to receive evidence on each of these factors. *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 897–98 (Tex. App.-Dallas 2003, no pet.). The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties. *Id.*

■■■ When a trial court awards attorneys' fees in a declaratory judgment action, we do not reverse the trial court's judgment on appeal unless the complaining party shows a clear abuse of discretion. *Apex Fin. Corp. v. Garza*, 155 S.W.3d 230, 238 (Tex.App.-Dallas 2004, pet. denied). Legal sufficiency is a relevant factor in assessing whether the trial court abused its discretion. *Armstrong v. Collin County Bail Bond Bd.*, 233 S.W.3d 57, 62 (Tex. App.-Dallas 2007, no pet.) (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991)).

■■■ Appellants contend that there is no evidence to support the award of $24,611 in attorneys' fees because appellees "presented no evidence of what is customary and usual fees in cases of this nature in Dallas County, Texas; no evidence as to the reasonableness of fees; and no evidence of whether the fees were necessary." Appellants also argue that there was "no support for this judgment" because the

judgment awarded $24,611 in fees, which is inconsistent with appellees' attorney's statement during trial that her fees were $23,166.

In response, appellees argue that there was sufficient evidence of $23,166 in attorneys' fees. However, they suggest that the judgment should be modified to reflect $23,166 in attorneys' fees rather than the $24,611 awarded. We agree with appellees.

During Oliver's trial testimony, the following exchange [2] occurred:

THE COURT: ... And sir, did you hire an attorney to represent you in this case?

BISHOP OLIVER: Yes.

THE COURT: And did you agree to pay reasonable attorney fees?

BISHOP OLIVER: Yes.

THE COURT: Who did you hire? Ms. Parker?

BISHOP OLIVER: Yes.

\* \* \*

THE COURT: Okay. And what are your attorney fees?

MS. PARKER: My attorney fees—I have an Affidavit, Your Honor.

THE COURT: Just tell me.

MS. PARKER: They are, I think with costs ... [m]y attorney's fees are $23,166 because we had to go back and research every piece of property.

THE COURT: I didn't hear. How much was that?

MS. PARKER: $23,166, and in my Affidavit, it outlines what those charges

were for, the various things that we performed in this case.

THE COURT: All right. Well, you may have to explain that a little bit more.

MS. PARKER: Certainly, Your Honor. In the final judgment, the trial court awarded appellees "Reasonable and Necessary Attorneys' Fees in the amount of $24,611.00." [3]

In summary, Oliver testified that appellees hired a lawyer and agreed to pay her reasonable attorneys' fees. Appellees' lawyer stated that her attorneys' fees were $23,166 and she also referred to her affidavit. In that affidavit she attested that her work on the case included "drafting the petition; preparing discovery; interviewing witnesses; consultation with the client; correspondence and phone calls; preparing the motion for summary judgment[,] motion to compel and motion for contempt; researching the properties" and preparing for trial. Her affidavit also states,

[Appellees] agreed to pay an hourly fee of $200 for my services on this case. These fees were reasonable and necessary for the services performed. The fee I charged is one customarily charged in this area for the same or similar services for an attorney with my experience, reputation, and ability, considering the type of controversy, the time limitation imposed, the results obtained, and the nature and length of my relationship with [appellees].

Appellants did not object to appellees' counsel's statements at trial, to her filed affidavit, or to the trial court's consider-

---

2. At the beginning of the trial, appellees' counsel requested "special permission" to lead Oliver's testimony because Oliver previously had a stroke, which made it "a little difficult for him to talk." Appellants did not object and the trial court agreed to the request.

3. The trial court struck through the second half of the typed sentence in the order, which read "$23,166.00, and legal assistant fees in the amount of $1445.00" and hand-wrote "$24,611.00" (the two amounts combined) in its place.

ation of the affidavit, nor do they argue on appeal that it was improper for the trial court to consider the affidavit. Instead, appellants argue that they "can only conclude that the award of fees was arbitrary" because the amount awarded, $24,611, is different than "the testimony of [appellees'] attorney wherein she testifies that her fee is $23,166."

We agree that the trial court awarded $1,445 more in attorneys' fees than the evidence supports, but we do not agree that the decision to award attorneys' fees was wholly "arbitrary," or that there was no evidence to support an award of $23,166. Based on this record, we conclude that the evidence was legally sufficient to support an award of attorneys' fees in this case in the amount of $23,166. *See, e.g., McCalla v. Ski River Dev. Inc.,* 239 S.W.3d 374, 381–82 (Tex.App.-Waco 2007, no pet.) (despite absence of any live testimony, previously filed, uncontroverted affidavit constituted legally sufficient evidence "of the time and labor required, of the fee customarily charged for similar representation in Johnson County, and of counsel's experience and ability" to support award of attorneys' fees under declaratory judgment act); *see also Tex. Comm. Bank, Nat'l Ass'n. v. New,* 3 S.W.3d 515, 516–18 (Tex. 1999) (per curiam) ("unobjected-to hearsay is, as a matter of law, probative evidence" and attorney's affidavit was legally sufficient to support award of attorneys' fees); *Armstrong v. Hixon,* 206 S.W.3d 175, 184 (Tex.App.-Corpus Christi 2006, pet. denied) (trial court did not abuse its discretion in awarding attorneys' fees in declaratory judgment action because record included unchallenged evidence of attorney's qualifications, hourly rate, time spent, and total amount of fees).

We modify the judgment to reflect that amount and overrule appellants' fourth issue.

## C. The Award of Benefit–of–the–Bargain Damages

█ In their third issue, appellants claim that there was no evidence to support the award of damages for the loss of the sale on one of the properties owned by New Covenant, located on North Denley Drive and known as the "Denley property." If there is more than a scintilla of evidence to support the finding, the evidence is legally sufficient. *Marchand,* 83 S.W.3d at 795 ("For legal sufficiency points, if there is more than a scintilla of evidence to support the finding, the no evidence challenge fails.").

According to the testimony and other evidence in our record, New Covenant attempted to sell the Denley property to Texas Heavenly Homes, Ltd. (Heavenly Homes) in 2005. A title search was performed in connection with that intended sale. As a result of that search, Oliver learned that in September 2004, someone forged his signature on a warranty deed purporting to transfer ownership of the Denley property from New Covenant to Love Fellowship. That warranty deed, which was admitted into evidence by the trial court without objection and is in our appellate record, states that after it is recorded in the property records, it should be "return[ed] to Larry Johnson" at the address provided. It also includes a file stamp indicating that it was filed in the property records. Appellees also submitted a subsequent warranty deed, which was signed by Johnson and admitted into evidence, which purported to transfer ownership of the Denley property to a third party, Robert Bradley Hicks.

After discovering that Oliver's signature was forged on the warranty deed, appellees did title searches on New Covenant's other properties and discovered that fraudulent warranty deeds purporting to transfer ownership to Love Fellowship had

also been recorded for two of New Covenant's other properties. Those warranty deeds were admitted as trial exhibits without objection and are also in our appellate record. Oliver testified that someone else signed his name on those deeds without his authorization, and that he was surprised to learn that someone had attempted to transfer New Covenant's properties. He also testified that his actual signature appeared on another trial exhibit, the contract of sale for the intended sale of the Denley property to Heavenly Homes. The trial court took judicial notice of the fact that the forged signatures on the three warranty deeds recorded in 2004 were different than Oliver's actual signature.

Appellants do not dispute these facts. Instead, appellants argue that Oliver's testimony about the fact that New Covenant could not sell the Denley property to Heavenly Homes because it appeared from the property records that Hicks had ownership rights in that property "does not link the Appellants to the contract of sale and the inability of the Appellees to sell the property subject of the contract." Appellants argue that "the testimony shows only that the property was owned by Mr. Hicks and that Mr. Hicks'[s] ownership prevented the sale by Appellees to the purchaser." We disagree.

The record in this case includes a chain of warranty deeds filed in the property records that establish the purported transfer of ownership of the Denley property. The first property record indicates that ownership of the Denley property was transferred from New Covenant to Love Fellowship. Oliver testified that his signature on that warranty deed was forged, and it is undisputed that the deed states that it should be returned to Johnson after it was recorded in the property records. Two months later, Johnson, on behalf of Love Fellowship, signed a second warran-

ty deed purporting to transfer ownership of that same property from Love Fellowship to Hicks. That warranty deed was also filed in the property records. Appellants did not object to the authenticity or admissibility of those property records.

■ Appellants also argue that "[t]here is no evidence that Appellants are liable for damages in the sum of $12,600.00." We again disagree. Oliver testified that he entered into a contract of sale with Heavenly Homes and planned to sell the property for $12,600. And the contract of sale, which was admitted into evidence, states that Heavenly Homes agreed to buy the Denley property for "twelve thousand, six hundred and no Dollars ($12,600.00) payable in cash at Closing." Oliver testified that the title problem caused by the forged warranty deed to Love Fellowship and the subsequent warranty deed to Hicks prevented the sale to Heavenly Homes. Consequently, based on the property records, contract of sale, and testimony in this case, there is more than a scintilla of evidence in the record to support the implied finding that appellees suffered $12,600 in damages for the loss of the sale of the Denley property. We conclude that the evidence is legally sufficient to support the judgment.

■ Appellants also argue that "[a]n action for conversion can only be maintained for personal property, nor [sic] for real property," and that appellees were required to demonstrate the fair market value of the property. They do not cite, however, anywhere in the record that they raised these complaints with the trial court and obtained a ruling. Consequently, they have not preserved these complaints for our review. *See* TEX.R.APP. P. 33.1(a) (preservation of complaint requires making it to trial court by timely request, objection, or motion, and either ruling or refusal to rule by trial court); *In re C.S.,* 198

S.W.3d 855, 857 (Tex.App.-Dallas 2006, no pet.) ("Almost all trial error, even constitutional error, is waived if appellant fails to object to the error at trial."). Additionally, they have not cited any authority to support their argument. Consequently, they have not sufficiently briefed this argument for appellate review. *See* Tex. R.App. P. 38.1; *Ratsavong*, 176 S.W.3d at 666. We overrule appellants' third issue.

## Conclusion

We overrule appellants' issues, modify the judgment to reflect an award of $23,166 in attorneys' fees, and otherwise affirm the judgment of the trial court.