MAG INSTRUMENT, INC., Appellant,

v.

G.T. SALES INC., d/b/a Investment Recovery Services, Appellee.

No. 05–07–01574–CV.

Court of Appeals of Texas, Dallas.

Aug. 24, 2009.

Rehearing Overruled Oct. 19, 2009.

Robert C. Weiss, Los Angeles, CA, Katherine Elizabeth Anderson, Strasburger & Price, L.L.P., Dallas, TX, for Appellant.

D. Woodard Glenn, David A. Lubin, D. Woodard Glenn, P.C., Dallas, TX, for Appellee.

Before Justices BRIDGES, RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice RICHTER.

After reviewing an auction brochure from G.T. Sales Inc., d/b/a Investment Recovery Services (IRS), Mag Instrument, Inc. decided to purchase sixteen Jones & Lampson optical comparators included in the brochure.[1] After IRS did not deliver all sixteen comparators following the auction, a dispute arose between the parties as to which documents governed the parties' agreement and the terms of the agreement. IRS filed suit requesting a declaration of the rights and duties of the parties. Mag counterclaimed seeking specific performance or, in the alternative, damages for breach of contract, fraud, and conversion as well as attorneys' fees, prejudgment interest, and court costs. Following a bench trial, the trial court found

---

1. An optical comparator is a measuring and magnifying device used by Mag to manufacture flashlights.

IRS had substantially complied with the terms of the contract and ordered IRS to refund to Mag costs associated with the undelivered comparators. In eight issues, Mag challenges the trial court's determination (1) of the terms of the parties' agreement; (2) that IRS substantially complied with those terms; and (3) of the amount of money owed to Mag. We affirm the trial court's judgment.

## Background

IRS agreed to conduct an auction of excess equipment for Superior Tool and Products and prepared a brochure of items that would potentially be included in the sale. The brochure contained a number of terms of sale applicable to items to be sold at the auction including a reservation of the right to withdraw or add equipment prior to the auction. Mag received one of the brochures and Mag's president, Anthony Maglica, decided to purchase the sixteen Jones & Lampson comparators included in the brochure.

Maglica contacted John Henry, IRS's sales representative, about purchasing the comparators. Maglica did not want to attend the auction and desired to purchase the comparators prior to the sale. Henry testified IRS did not have the authority to sell equipment prior to the auction and the parties ultimately agreed IRS would bid on Mag's behalf at the auction. According to Henry and Greg Trenor, IRS's owner, IRS agreed to proxy bid for Mag at the auction and that IRS would ensure Mag was the winning bidder on all comparators sold at the auction. Mag agreed to pay $55,000 for all sixteen comparators but, if the price was higher than Mag had agreed to pay, IRS would pay the difference. Maglica testified he believed he purchased the comparators prior to the auction.

At Maglica's request, Henry sent to Mag a handwritten list of the serial numbers of the sixteen Jones & Lampson comparators included in the brochure. On July 14, 2004, Mag prepared a purchase order listing the sixteen comparators by serial number, each with a unit price of $3,437.50, and containing a number of terms and conditions. Although there is no evidence of when it was mailed, Mag mailed the purchase order. Also on July 14, 2004, IRS faxed Mag an invoice for $55,000 for sixteen comparators without listing the serial number of each comparator. Trenor testified the invoice was not related to Mag's purchase order and he did not accept the purchase order. According to Trenor, he did not request the purchase order from Mag and did not know why the purchase order was sent. Henry testified the purchase order was not part of his agreement with Maglica. There was no evidence regarding when IRS received the purchase order, but Trenor was "pretty sure" it was after IRS issued the invoice. Mag paid IRS's invoice on July 15, 2004.

IRS conducted the auction on July 20, 2004. Dan Bell, a supervisor with Mag, attended the auction. Bell signed a "Buyer's Registration and Terms of Agreement" at the auction that acknowledged he had inspected all of the assets he would be purchasing and agreed to accept the purchased assets "as is." The terms also provided IRS had the right to withdraw items from the auction and that IRS would proxy bid any absentee bids. Finally, the terms stated,

Although all information has been obtained from sources deemed reliable, the auctioneer and seller make no warranty or guarantee, expressed or implied, as to the accuracy of the information herein contained, or contained in our catalog. It is for this reason that buyers should avail themselves of the opportunity to make inspection prior to the auction.

Although Bell bid on other items, he did not bid on any comparator offered for sale. Mag, through IRS, was the winning bidder on every comparator sold at the auction.

Superior Tool and Products offered only eleven comparators for sale at the auction and only five of those comparators were included in the handwritten list Henry provided to Mag. Mag received twelve comparators including a comparator Mag had rejected during the pre-auction negotiations and a tabletop comparator for which Mag was not charged. IRS issued a new invoice for eleven comparators with a total price of $37,812.50 and sent a check for $17,187.50 to Mag as a refund for five comparators. Mag did not cash the check and insisted IRS provide it with the eleven comparators from Henry's handwritten list that Mag had not received. IRS filed a declaratory judgment action against Mag requesting a determination of the contract terms and its duties under the contract. Mag filed a counterclaim for breach of contract, fraud, and conversion seeking specific performance of the contract or, alternatively, damages.

The main issue at trial was whether the terms contained in the auction brochure, on the card signed by Bell at the auction, and on IRS's invoices or the terms contained in Mag's purchase order controlled the contract. The trial court determined the terms in the auction documents controlled and that IRS substantially complied with those terms. The trial court ordered IRS to refund to Mag $20,625 based on Mag receiving only ten Jones & Lampson comparators. The trial court also ordered IRS to refund to Mag the shipping costs and taxes paid for the six comparators that Mag did not receive and the shipping costs for the comparator that was not the correct model and for the tabletop comparator. Mag appealed.

## Standard of Review

█ In a nonjury case where no findings of fact or conclusions of law are requested by the parties or filed by the trial court, the judgment implies all findings of fact necessary to support it. *Johnson v. Oliver,* 250 S.W.3d 182, 186 (Tex.App.-Dallas 2008, no pet.). But if the appellate record includes a reporter's and clerk's record, these implied findings may be challenged on appeal for factual sufficiency and legal sufficiency the same as jury findings or a trial court's findings of fact. *Id.*

█ When a party challenges the legal sufficiency of the evidence to support a finding on which it had the burden of proof on at trial, it must demonstrate on appeal that the evidence conclusively established the facts in its favor as a matter of law. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001) (per curiam); *Johnson v. Kindred,* 285 S.W.3d 895, 898 (Tex.App.-Dallas 2009, no pet.). We indulge every reasonable inference to support the judgment, crediting favorable evidence if a reasonable jury could and disregarding contrary evidence unless a reasonable jury could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 822 (Tex.2005). To prevail in a factual sufficiency challenge, a party who had the burden of proof at trial must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.,* 46 S.W.3d at 242. We reverse only if, in light of the entire record, the evidence supporting the finding is so weak or the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id.* at 242; *Barnett v. Coppell N. Tex. Court, Ltd.,* 123 S.W.3d 804, 814 (Tex. App.-Dallas 2003, pet. denied).

## Applicable Contract

In its first two issues, Mag contends the evidence established as a matter of law

that the purchase order controlled the parties' contract and the evidence is both legally and factually insufficient to support the trial court's finding the auction documents established the terms of the contract. Mag argues that under section 2.201(c)(3) of the business and commerce code, the purchase order controls the parties' obligations.[2]

■ It is undisputed the parties agreed to a price of $55,000 for the sixteen comparators listed in the auction brochure. Maglica testified he believed he purchased the comparators prior to the auction. However, both Trenor and Henry testified IRS could not sell the comparators prior to the auction, but agreed to bid for Mag on all comparators that were sold at the auction. The terms of sale in the auction brochure indicated the seller could remove and add equipment prior to the auction. Although Mag issued and mailed a purchase order listing sixteen specific comparators, there was no evidence IRS received the purchase order prior to faxing its invoice to Mag or prior to Mag paying the invoice. Accordingly, there was no evidence any terms included in the purchase order formed the basis of IRS accepting payment from Mag, and the evidence did not establish as a matter of law that Mag's purchase order contained the terms of the parties' agreement.

■ Further, it is undisputed Mag received a copy of the auction brochure and, based on that brochure, Maglica contacted IRS about purchasing all comparators offered for sale. Henry testified he told Maglica he could not sell the comparators prior to the auction. Henry and Trenor testified the parties agreed IRS would bid on Mag's behalf at the auction and that Mag would be the winning bidder on all comparators sold at the auction. IRS sent Mag an invoice for $55,000 for sixteen comparators, and Mag paid the invoice. Trenor and Henry testified the purchase order was not expected and did not form the basis of the agreement. IRS bid on Mag's behalf at the auction and purchased for Mag all comparators sold at the auction. We conclude the evidence is legally and factually sufficient to support the trial court's finding the parties' contract was governed by the auction documents. We overrule Mag's first and second issues.

## Breach of Contract

■ In its third and fourth issues, Mag argues the evidence established as a matter of law that IRS breached the contract by failing to deliver the sixteen comparators identified in Mag's purchase order and there is no evidence Mag accepted the deficient performance. "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 214 (Tex. App.-Dallas 2005, no pet.). Mag's third and fourth issues are necessarily premised on findings the purchase order controlled the terms of the parties' agreement and that the purchase order required IRS to deliver the specifically identified comparators. Because the evidence is sufficient to support the trial court's determination the auction documents controlled, the evidence does not establish as a matter of law that IRS promised to comply with the terms of the purchase order. We overrule issues three and four.

2. Section 2.201(c)(3) of the business and commerce code provides "A contract which does not satisfy the requirements of Subsection (a) [that a contract for the sale of goods of $500 or more must be in writing] but which is valid in other respects is enforceable with respect to goods for which payment has been made and accepted or which have been received and accepted." TEX BUS. & COM.CODE ANN. § 2.201(c)(3) (Vernon 2009).

## Substantial Compliance

In its fifth issue, Mag asserts IRS was not entitled to claim it substantially complied with its duties under the contract because IRS failed to plead substantial performance. In its sixth issue, Mag contends the evidence is legally and factually insufficient to support the trial court's finding IRS substantially complied with its contractual obligations.

 The doctrine of substantial performance is an equitable doctrine that allows breaching parties who have substantially completed their obligations to recover on a contract for the opposing party's breach. *See Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex.1990) (per curiam) (building contract context); *RAJ Partners, Ltd. v. Darco Const. Corp.*, 217 S.W.3d 638, 643 (Tex.App.-Amarillo 2006, no pet.). Here, IRS did not seek to recover damages from Mag; rather, IRS sought a declaration of its duties under the parties' contract. Because IRS did not seek to recover on the contract based on substantial performance, it was not required to plead it substantially performed. Mag also asserts the evidence is legally and factually insufficient to support the trial court's determination IRS substantially complied with its duties under the parties' agreement. As noted, the evidence was sufficient to support the trial court's determination the terms in the auction documents controlled the parties' agreement. IRS performed under the agreement by bidding for Mag on every comparator offered for sale at the auction. Only eleven, rather than sixteen, comparators were sold at the auction, and IRS attempted to refund to Mag the funds associated with five comparators. However, one of the comparators purchased at the auction was specifically rejected by Mag prior to the auction, and the trial court determined IRS miscalculated the refund it owed to Mag. We conclude the evidence is legally and factually sufficient to support the trial court's determination IRS substantially complied with its obligations under the contract. We overrule issues five and six.

## Fraud

In issue seven, Mag contends the trial erred by denying Mag's claim for actual and exemplary damages for fraud because the evidence establishes as a matter of law "or alternatively, raises a question of fact" that IRS had authority to sell the comparators described in the purchase order. As discussed above, the evidence is legally and factually sufficient to support the trial court's determination the auction documents controlled the parties' agreement. Those documents provide that specific equipment can be withdrawn from or added to the auction. Further, Henry testified he told Maglica that IRS could not sell the equipment until the date of the auction.

 The evidence does not establish as a matter of law that IRS made a misrepresentation to Mag about IRS's authority to sell the comparators. Further, to the extent it is encompassed in Mag's complaint, we conclude the evidence is also factually sufficient to support the trial court's determination IRS did not make a material misrepresentation. We overrule Mag's seventh issue.

## Damages

In its eighth issue, Mag asserts the trial court improperly calculated damages because Mag is entitled to recover damages under the business and commerce code for all of the comparators that Mag purchased because IRS breached the contract; the trial court failed to award Mag its attorneys' fee, costs, and prejudgment interest;

and the trial court failed to award exemplary damages based on fraud.

As noted above, the evidence was legally and factually sufficient to support the trial court's denial of Mag's fraud claim against IRS. Therefore, the trial court did not err by failing to award Mag exemplary damages on its fraud claim.

Mag's assertion the trial court erred in its damages calculation on the breach of contract claim is, again, premised on the purchase order controlling the parties' agreement and IRS breaching that agreement. Mag has not challenged the trial court's calculation of the refund due to Mag under the auction documents. *See* Tex.R.App. P. 38.1(i).

Mag cites to section 304.104 of the Texas Finance Code and *Brainard v. Trinity Universal Insurance*, 216 S.W.3d 809 (Tex.2006) in support of its argument it is entitled to prejudgment interest. Mag's reliance on these authorities, however, is misplaced. Section 304.104 of the finance code, which provides that prejudgment interest accrues from the date of suit until the date judgment is rendered, applies only to personal injury, wrongful death, and property damage cases. *See* Tex. Fin.Code Ann. § 304.101, 304.104 (Vernon 2007). And, *Brainard* concerned a wrongful death claim. *Brainard*, 216 S.W.3d at 811. By failing to cite us to any authority supporting its contention it was entitled to prejudgment interest, Mag has waived any complaint to the trial court's failure to award prejudgment interest. *See* Tex.R.App. P. 38.1(i).

Mag also argues the trial court erred by failing to award Mag its costs. To be entitled to court costs, Mag needed to be a "successful" party. Tex.R. Civ. Proc. 131 ("successful" party shall recover costs of suit). A "successful" party is "one who obtains judgment of a competent court vindicating a civil right or claim." *City of Houston v. Woods*, 138 S.W.3d 574, 581 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Whether a party is "successful" is based upon success on the merits and not on the award of damages. *Moore v. Trevino*, 94 S.W.3d 723, 729 (Tex.App.-San Antonio 2002, pet. denied).

Here, the trial court denied Mag's fraud claim. Further, the trial court ruled for IRS on its declaratory judgment action by determining the auction documents governed the parties' agreement and that IRS had substantially complied with its obligations under that contract. Although the trial court determined IRS had miscalculated the refund owed to Mag under the parties' contract, we cannot say Mag was "successful" in this case, and any argument to the contrary is without merit.

So, too, is any argument the trial court erred by failing to award Mag its attorneys' fees. Although a prevailing party to a contract suit is entitled to attorneys' fees, *see* Tex. Civ. Prac. & Rem.Code Ann. § 38.001 (Vernon 2007), the prevailing party is typically the party who either successfully prosecutes the action or successfully defends against it, prevailing on the main issue. *Jakab v. Gran Villa Townhouses Homeowners Ass'n, Inc.*, 149 S.W.3d 863, 867 (Tex.App.-Dallas 2004, no pet.). In other words, the prevailing party is the one vindicated by the judgment. *Id.*

As noted, it is difficult to say Mag prevailed on the main issue in this case. Rather, the trial court determined IRS was correct on the main issue in the case, the terms of the parties' agreement, and determined IRS substantially complied with its obligations under that agreement. We cannot say the trial court's recalculation of the refund due to Mag vindicated Mag's position. Because Mag was not the

prevailing party, the trial court did not err by denying Mag's claim for attorney's fees.

We overrule Mag's eighth issue.

Because Mag has failed to show any error by the trial court, we affirm the trial court's judgment.