

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00023-CV

_____

EDUARDO CAVENDISH D/B/A VANGUARD
PORTABLE SOLUTIONS, INC., Appellant

V.

ATASHI TOWN HOMES, LLC, Appellee

_____

On Appeal from the County Court at Law
Rockwall County, Texas
Trial Court No. 1-13-464

_____

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

Eduardo Cavendish d/b/a Vanguard Portable Solutions, Inc. (Cavendish), sued Atashi Town Homes, LLC (Atashi), for breach of contract, quantum meruit, and unjust enrichment arising from the alleged failure to pay for services rendered in connection with Cavendish's purported engagement to construct a home for Atashi.[1] In a verified answer, Atashi stated (1) that it paid Cavendish $300.00 for a topographic map, (2) that Cavendish sent a proposed contract to Atashi for review, (3) that Cavendish was paid $10,000.00 "toward the anticipated [construction] with the understanding that [Cavendish's] proposal was under review," (4) that Atashi rejected Cavendish's proposal for the build, (5) that there was no contract between Atashi and Cavendish, and (6) that Atashi had overpaid Cavendish. Due to the overpayment, Atashi filed a counterclaim for money had and received.

After a bench trial, the court ruled that Cavendish take nothing on his claims and awarded Atashi $1,300.00 on its claim for money had and received. On appeal, Cavendish challenges the legal and factual sufficiency of the evidence supporting the judgment.[2] Because we find that the evidence is legally and factually sufficient to support the trial court's findings, we affirm the trial court's judgment.

---

[1]The original style of this case was "*Eduardo Cavendish d/b/a Vanguard Portable Solutions, Inc. and Vanguard Portable Solutions, Inc. v. Gus Atashi Rang and Atashi Town Homes, LLC*." During trial, Cavendish told the court, "Plaintiffs will drop Vanguard Portable Solutions, Inc., as a plaintiff and will nonsuit -- the remaining plaintiff Eduardo Cavendish, will nonsuit claims in the petition against Dr. Rang personally and just continue against Atashi Town Homes, LLC." Despite inclusion of the original style of the case, which included four parties, the substance of the trial court's final judgment involved only "Cavendish d/b/a Vanguard Portable Solutions, Inc." and Atashi. Although the notice of appeal used the original style of the case, we have amended the style of the case to reflect the true remaining parties to the appeal.

[2]Originally appealed to the Fifth Court of Appeals in Dallas, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Fifth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

## I.    The Evidence

Homebuilder Cavendish had completed construction of approximately twenty homes in the Chandler's Landing subdivision of Rockwall, Texas, when his work caught the attention of Dr. Ghassem Atashi Rang. Rang wanted to build a residential rental property for his company, Atashi. Rang called Cavendish to ask if his company could build a home on a lot owned by Atashi.

Cavendish testified that he and Rang met on the lot and began discussing plans for the home in October 2012. Rang paid Cavendish $300.00 for a topographical survey that was completed by Rhodes Surveying on October 23, 2012. According to Cavendish, he quoted Rang a build price of eighty-five dollars per square foot. According to Rang, Cavendish quoted a price of eighty dollars per square foot and said that the home could be built for around $200,000.00. Cavendish testified that Rang had originally contemplated a 2,700 square-foot home, but later decided to build a 3,050 square-foot home. Rang asked Cavendish to provide Atashi with a contract memorializing the offer so that it could be reviewed by Atashi's counsel.

Cavendish's initial proposed contract, which he provided to Rang "about a month or two months after [they] started . . . talking about the . . . house," listed the company, Vanguard Portable Solutions, Inc., as the contractor.[3] According to Rang, the price of this initial contract was higher than the eighty dollar per square foot price he had been quoted because it included separate fees for building the foundation and a retaining wall. Rang turned the contract over to Atashi's counsel for review.

---

[3]This initial proposed offer is not included in our appellate record.

3

Cavendish admitted that he did not wait for payment or written contract before beginning work on the project. However, Cavendish believed that all was fine because he spoke with Rang around three times per week, met with him several times, and was assured that Rang was aware that work on the project had begun. Cavendish met and spoke with city inspectors, drainage engineers, foundation engineers, a concrete subcontractor, and an architect. Cavendish testified, "I'd been asking [Atashi] to sign the contract since December [2013]. In December [Rang] decided to give me another excuse. Then I told him, look, I don't do job anymore . . . and I've been paying the subs with my money." Cavendish further testified that Rang wrote him a $10,000.00 check on the "date [Cavendish] decided to quit the job" while the proposed contract was pending counsel's review.

Atashi's counsel discovered that the company charter for Vanguard Portable Solutions, Inc., had been forfeited. Accordingly, Rang did not sign Cavendish's initial proposed contract. Instead, Rang proposed a counteroffer in which he agreed to pay $240,000.00 for the build. The counteroffer was rejected by Cavendish.

Nevertheless, Cavendish continued to work on the project. In March 2013, Cavendish filed a building permit application with the City of Rockwall listing himself, individually, as the contractor. Cavendish stated on the building permit that the home would be 3,738 square feet— not 3,050 square feet—with an estimated value of $210,000.00. Cavendish did not pay for the building permit and failed to list the name of the building owner on the application because there was no agreement on the build price.

Also in March 2013, Cavendish sent another offer and proposed contract listing (1) "VPS Investments" as the contractor (even though Cavendish testified that he, individually, was the contractor), (2) "Gus Atashi Rang" as the owner (instead of Atashi), and (3) $259,675.00 as the final price for the build. The proposed contract required Rang to "pay a sum of ten thousand Dollars, ($10,000.00), upon signing of this contract and before construction begins as a deposit and part of the purchase price of the project." The contract also contained a set payment schedule with the last installment due on the ninth week of the build. Atashi did not accept the offer.

According to Cavendish, negotiations broke down because Cavendish wanted to be paid up front, and Atashi wanted to structure the payments. Rang testified that after he sent the counteroffer to Cavendish, Cavendish agreed that he would complete construction before demanding payment, but only if Atashi agreed to a new price of ninety dollars per square foot. On April 4, 2013, Rang, as president of Atashi, sent a letter to Cavendish stating that he had decided not to build on the lot because they could not come to an agreement on the contract. At trial, Cavendish candidly admitted that he received the letter and that "the contract never happened." Rang testified that Atashi did not hire Cavendish to build the house.

It is undisputed that no ground was broken on the lot. However, Atashi offered to pay Cavendish $638.00 for his "time and effort." Arguing that this sum was not enough, Cavendish filed suit. At trial, Cavendish argued that he should receive $25,000.00. Cavendish explained that he expected a $100,000.00 profit on the build job, that a build job is comprised of four

5

phases, that he had completed the first planning phase, and that he should receive one-fourth of the expected profit.

Cavendish testified that he met with approximately twenty to twenty-five subcontractors, spent more than 200 hours on the build job, and received and paid the following invoices: (1) a $5,950.00 invoice from engineer Allen Gustavson[4]; (2) a $1,100.00 invoice from Geotechnical Solutions; (3) a $1,127.00 invoice from foundation engineer Eric David, and; (4) a $500.00 invoice from drainage engineer Tom Witherspoon. Cavendish claimed that the total paid to others was around $8,700.00 and that Atashi had paid $10,000.00 toward expenses, leaving $1,300.00.[5]

As a result of Cavendish's testimony, Atashi amended its counterclaim to state that Cavendish had received $1,300.00, which should be reimbursed. The trial court agreed with Atashi, entered a take-nothing judgment against Cavendish and awarded the $1,300.00 to Atashi on its counterclaim.

## II. Legally and Factually Sufficient Evidence Supported the Trial Court's Take-Nothing Judgment

### A. Standard of Review

We review the sufficiency "of the evidence to support a trial court's judgment after a bench trial under the same standards applicable to a jury's verdict." *See Hampden Corp. v. Remark, Inc.*, No. 05–13–00529–CV, 2014 WL 2921655, at *6 (Tex. App.—Dallas Jun. 25, 2014, pet. denied) (mem. op.) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per

---

[4]Gustavson's invoice was based on a rate of "$1.50 per square feet Under Roof" and a size of 3,968 square feet.

[5]While Cavendish testified that Atashi had the blueprints to the house, Rang testified that Atashi did not have the plans.

6

curiam)). "In a bench trial where no findings of fact or conclusions of law are requested by the parties or filed by the trial court, the judgment implies all findings of fact necessary to support it." *Johnson v. Oliver*, 250 S.W.3d 182, 186 (Tex. App.—Dallas 2008, no pet); *see Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). "If a reporter's record is filed, an appellant may challenge the legal and factual sufficiency of the trial court's implied findings." *Hampden Corp.*, 2014 WL 2921655, at *6.

"In evaluating the legal sufficiency of the evidence to support a finding, we must determine whether the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Celmer v. McGarry*, 412 S.W.3d 691, 700 (Tex. App.—Dallas 2013, pet. denied). "When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which the party had the burden of proof, it must show that the evidence establishes as a matter of law all vital facts in support of the issue." *Hampden Corp.*, 2014 WL 2921655, at *6 (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam); *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 710 (Tex. App.—Dallas 2011, pet. denied)). "The appellant must show that there is no evidence to support the trial judge's finding and that the evidence conclusively establishes the finding urged by the appellant." *Id.* (citing *R.J. Suarez Enters., Inc. v. PNYX L.P.*, 380 S.W.3d 238, 245 (Tex. App.—Dallas 2012, no pet.)).[6]

---

[6]"'Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case.'" *Hampden Corp.*, 2014 WL 2921655, at *6 (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005)).

"When we review a finding for factual sufficiency, we consider all of the evidence and will set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 836 (Tex. App.—Dallas 2008, pet. denied) (citing *Francis*, 46 S.W.3d at 242; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)).

In our review, we must credit evidence favorable to the finding if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Hampden Corp.*, 2014 WL 2921655, at *6 (citing *Wilson*, 168 S.W.3d at 827).

### B.      There Was No Express or Implied Contract

Cavendish argues that the trial court erred in entering a take-nothing judgment on its breach of contract claim. "The elements of a breach of contract claim are (1) the existence of a valid contract, (2) the plaintiff's performance or tendered performance, (3) the defendant's breach of the contract, and (4) damages as a result of the breach." *Jespersen v. Sweetwater Ranch Apts.*, 390 S.W.3d 644, 658 (Tex. App.—Dallas 2012, no pet.). "Whether an alleged agreement constitutes an enforceable contract is generally a question of law." *Effel v. McGarry*, 339 S.W.3d 789, 792 (Tex. App.—Dallas 2011, pet. denied) (citing *Searcy v. DDA, Inc.*, 201 S.W.3d 319, 322 (Tex. App.—Dallas 2006, no pet.)). There is no binding contract without "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; [and] (4) each party's consent to the terms . . . ." *Id.* (citing *Searcy*, 201 S.W.3d at 322).

On appeal, Cavendish admits that there was no final written agreement, but argues that a contract should be implied because the parties acted as if there was an agreement. However, "[f]or a contract to be formed, the minds of the parties must meet with respect to the subject matter of the agreement and all its essential terms." *Argo Data Res. Corp. v. Shagrithaya*, 380 S.W.3d 249, 274 (Tex. App.—Dallas 2012, pet. denied) (citing *Effel*, 339 S.W.3d at 792). "The parties must assent to the same thing in the same sense at the same time." *Id*. "Their assent must comprehend the whole proposition, and the agreement must comprise all of the terms that they intend to introduce into it." *Id*. "Furthermore, the legal obligations and liability of the parties must be sufficiently definite." *Id.*

Cavendish testified that Atashi originally wanted a 2,700-square-foot house, but settled on a 3,050-square-foot house. However, Cavendish's building permit stated that the home would be 3,738 square feet, and his invoices from Gustavson were based on an estimated 3,968 square feet. Based on these facts, the trial court was free to find that there was no meeting of the minds on the work to be done. Although Atashi paid $300.00 for a topographical survey and another $10,000.00 to cover Cavendish's expenses for his continued work on the home, Cavendish testified that he initially quoted one price, while Rang testified that he had initially quoted a lower price. Thus, the trial court could have determined that there was never an agreement on the price of the home. Due to Cavendish's testimony that he and Atashi could not agree on the payment structure, the court could find that there was no agreement as to the phases of the build,

9

when payments would be due, or whether Cavendish would be entitled to any payment prior to completion of the build.[7] In sum, there was no agreement on the material terms of the contract.

"A contract must be definite because a party cannot accept an offer to form a contract unless the terms of that contract are reasonably certain[,] and the court must be able to determine the legal obligations and liabilities of the parties." *Id.* "Although Texas courts favor validating contracts, we may not create one where none exists." *Id.* Based on the facts of this case, which demonstrate an absence of a meeting of the minds, we find that a contract cannot be implied. Even Cavendish admitted that the negotiations with Atashi broke down and that "the contract never happened."

Accordingly, Cavendish cannot show that he conclusively established his breach of contract claim or that the trial court's judgment was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We find the evidence both legally and factually sufficient to support the trial court's implied finding that there was no meeting of the minds regarding the build and, thus, no express or implied contract.

## C. Sufficient Evidence Supports Trial Court's Decision on Equitable Claims

Next we address whether the evidence is legally and factually sufficient to support the trial court's denial of equitable relief to Cavendish. Cavendish sought to recover under the theories of unjust enrichment and quantum meruit.[8]

---

[7]Further, the record was unclear as to when the construction was to be completed.

[8]A plaintiff who seeks to recover the reasonable value of services rendered or materials supplied will be permitted to recover in quantum meruit or unjust enrichment only when there is no express contract covering those services or materials. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex. 2000); *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988) (citing *Black Lake Pipeline Co. v. Union Constr. Co.*, 538 S.W.2d 80, 86 (Tex. 1976), *rev'd on*

"A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Here, Cavendish testified that he spent over 200 hours on the project in making telephone calls and working with subcontractors and city inspectors. Rang testified (1) that Cavendish was building other homes in Chandler's Landing, (2) that the subcontractors were already working for Cavendish on other projects, (3) that the plan and blueprints for his proposed home were being used on a nearby lot that Cavendish owned, and (4) that he never received the plans or blueprints for his home even though he had paid for them. Thus, Rang questioned whether the 200 hours of work "was for my project or for the others." As the fact-finder, the trial court could have determined that Cavendish's work reflected time spent mostly on other projects.

Also, the evidence showed that Atashi paid $10,000.00 to Cavendish to cover Cavendish's expenses in obtaining the plan and blueprints, but that Rang did not receive any blueprints and no ground was broken on the project. Thus, the trial court could have determined that Atashi did not receive any benefit that it had not already paid for. Further, because there was never an understanding that Cavendish would be entitled to payment for anything other than his expenses during the planning phase, the court could have found that Atashi did not benefit by fraud, duress, or the taking of unfair advantage. Thus, Cavendish cannot show that he

---

*other grounds by Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989); *Woodard v. Sw. States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964)). "That is because parties should be bound by their express agreements. When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Fortune Prod.*, 52 S.W.3d at 684.

conclusively established his breach of contract claim or that the trial court's judgment was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

We reach a similar conclusion with respect to Cavendish's quantum meruit claim. "Quantum meruit is an equitable theory of recovery . . . based on an implied agreement to pay for benefits received." *Heldenfels Bros.*, 832 S.W.2d at 41 (citing *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)). "[A] trial court exercises broad discretion in balancing the equities involved in a case seeking equitable relief." *Edwards*, 252 S.W.3d at 836 (citing *In re Gamble*, 71 S.W.3d 313, 317 (Tex. 2002) (orig. proceeding); *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939)). "We will not disturb a trial court's ruling on a claim seeking equitable relief unless it is arbitrary, unreasonable, and unsupported by guiding rules and principles." *Id.* (citing *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004)).

"To recover under the doctrine of quantum meruit, a plaintiff must establish that: 1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." *Heldenfels Bros.*, 832 S.W.2d at 41 (citing *Vortt Exploration*, 832 S.W.2d at 944).

Under the theory of quantum meruit, the plaintiff may be able to recover the reasonable value of his services as determined by a fact-finder. *See Celmer*, 412 S.W.3d at 709. Cavendish argues that he provided valuable services in contacting subcontractors and obtaining plans on Atashi's behalf. Yet, the trial court could have decided that Cavendish's services in contacting

12

third parties were conducted mostly for his own benefit for other projects. Even assuming that valuable services were provided to Atashi, Cavendish had to show that Atashi expected to compensate him. *See Gen. Capital Grp. Beteligungsberatung GMBH v. AT & T*, 407 S.W.3d 507, 512 (Tex. App.—Dallas 2013, pet. denied).

Cavendish testified about his expected profit, that he divided the build into four separate phases and that he was entitled to $25,000.00 in profit for each phase. However, nothing in the record suggested that Atashi was aware of the four phases, the expected profit, or that it would be required to compensate Cavendish after each phase. In fact, the last counteroffer sent by Cavendish listed seven events that would trigger payment, with the first payment being "$10,000.00 . . . [triggered] by the signature of the contract."[9] Because no contract was signed, the evidence indicates that Atashi did not expect to compensate Cavendish until there was a signed contract to build. Moreover, Cavendish did not expressly testify that he expected to be paid for the telephone calls and meetings during the planning phase in the absence of any contract. Instead, he testified that Ghessem never told him that Atashi would not compensate him for these efforts.

As a finder of fact, the trial court could have decided that Cavendish's services were not provided under circumstances that reasonably notified Atashi that he expected to be paid for anything other than his expenses during the planning phase. Thus, Cavendish cannot conclusively establish that there was an implied agreement to pay for his efforts during the planning phase. Accordingly, we cannot say that the trial court's judgment that Cavendish take

---

[9] The second phase required the city permit to be obtained.

13

nothing by his quantum meruit claim is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

We find the evidence legally and factually sufficient to support the trial court's judgment that Cavendish failed to prove a breach of contract or that he was entitled to recover under theories of unjust enrichment or quantum meruit. We overrule Cavendish's first point of error.

### III. Legally and Factually Sufficient Evidence Supported the Trial Court's Judgment on Atashi's Counterclaim

Cavendish also attacks the legal and factual sufficiency of the trial court's finding that Atashi was entitled to recover on its counterclaims. Because, under this point of error, Cavendish is attacking the legal sufficiency of an adverse finding for which he did not have the burden of proof, he must demonstrate that there is no evidence to support the adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983).[10] If the evidence is legally sufficient, then we review the evidence for factual sufficiency to determine whether it "is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

When Cavendish threatened to leave the job because he was paying for expenses out of his own pocket, Rang gave Cavendish $10,000.00 to cover his expenses. Cavendish used the money and continued to work on the build in the absence of either a signed contract or a meeting

---

[10]A no evidence point will be sustained when the evidence offered to prove a vital fact is no more than a mere scintilla. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). "More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence." *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002). Evidence is legally sufficient if it "'would enable reasonable and fair-minded people to reach the verdict under review.'" *Lambright v. Trahan*, 322 S.W.3d 424, 430 (Tex. App.—Texarkana 2010, pet. denied) (quoting *Wilson*, 168 S.W.3d at 827).

14

of the minds on the essential terms. Cavendish testified that $1,300.00 remained after his expenses had been paid. In an attempt to characterize Rang's payment for expenses as something other than what it was, Cavendish argues on appeal that the $1,300.00 "down payment is reasonably held by [Cavendish] as he was not compensated according to the terms of the agreement between the parties."

"The claim for money had and received seeks equitable relief." *Edwards*, 252 S.W.3d at 836 (citing *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 n.1 (Tex. 2007) (per curiam); *Acoustical Screens in Color, Inc. v. T.C. Lordon Co.*, 524 S.W.2d 346, 350 (Tex. Civ. App.— Dallas 1975, writ ref'd n.r.e.)). "[A]n action for money had and received is not to be denied or restricted by technicalities and formalities because such an action looks to the abstract justice of the case. It simply inquires whether defendant holds money belonging to the plaintiff." *Acoustical Screens in Color, Inc. v. T.C. Lordon Co.*, 524 S.W.2d 346, 350 (Tex. Civ. App.— Dallas 1975, writ ref'd n.r.e.)

As we have previously explained, there was no express or implied agreement between Cavendish and Atashi, and nothing otherwise suggested that Atashi would be required to compensate Cavendish for anything other than his expenses during the planning phase. Accordingly, we find the evidence legally and factually sufficient to support the trial court's judgment on Atashi's counterclaim. We overrule Cavendish's second point of error.[11]

---

[11] Due to our disposition on Cavendish's first two points of error, we need not address his argument that the trial court erred in failing to award his attorney fees.

## IV.     Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     November 5, 2014
Date Decided:       December 16, 2014