Jason SEARCY, Trustee for the
Bankruptcy Estate of Michael
Engleman, Appellant

v.

DDA, INC. f/k/a Gandy Nursery, Inc.,
DAD Marketing & Trucking, Inc.,
f/k/a Gandy Marketing & Trucking,
Inc. and ADD Real Estate, Ltd. f/k/a
Gandy Real Estate & Nursery Inven-
tory, Ltd., Appellees.

No. 05–05–00982–CV.

Court of Appeals of Texas,
Dallas.

Aug. 17, 2006.

Rehearing Overruled Oct. 9, 2006.

Bruce Monning, Monning & Wynne, L.L.P., Dallas, for appellant.

James Keith Mayo, Mayo, Mendolia & Starr, P.C., Tyler, for appellees.

Before Justices MORRIS, BRIDGES, and RICHTER.

## OPINION

Opinion by Justice MORRIS.

In this appeal from a summary judgment, Jason Searcy, as trustee for the bankruptcy estate of Michael Engleman, contends the trial court erred in dismissing Engleman's claims for breach of contract. Searcy argues the trial court erred in granting a no-evidence summary judgment because there was evidence of a valid and enforceable commission contract as well as evidence to support piercing the corporate veil to hold all the defendants liable for the breach. Searcy further contends the trial court erred in granting a traditional summary judgment on the issues of judicial estoppel, waiver, laches, and payment. After reviewing the summary judgment evidence, we conclude the trial court correctly granted summary judgment on Engleman's claims against DDA, Inc. f/k/a Gandy Nursery, Inc., DAD Marketing & Trucking, Inc., f/k/a Gandy Marketing & Trucking, Inc. and ADD Real Estate, Ltd., f/k/a Gandy Real Estate & Nursery Inventory, Ltd. (collectively "Gandy") because the summary judgment record contains no evidence of an enforceable contract.

### I.

Michael Engleman worked as an independent contractor selling trees and other nursery items to retailers and landscapers. In 1995, Engleman spoke with Dennis Gandy, owner of Gandy Nursery. According to Engleman, he and Gandy discussed Engleman's ability to secure Home Depot as a customer for Gandy. Engleman stated that in the course of these discussions, Gandy told him he would pay Engleman "five percent of all Home Depot business." Gandy denied ever making such a statement.

Following that conversation, Engleman and Gandy signed a document entitled "Sales Representatives for Gandy Nursery." The document stated it was intended as "guidelines for those who will represent us as a sales force." The guidelines contained both a definition of the commissions to be paid to sales representatives as well as a schedule of when the commissions would be paid. Commissions were defined as "monies paid to a sales person for an account which he has sold and collected." The guidelines further stated that once an invoice had been paid, the sales person would be "paid for the sale less the freight and any returns." No specific amount of commission was set forth, however. According to the guidelines, commissions would be paid once a month and any accounts that were ninety days in arrears would not be considered for a commission. The guidelines also specified that Gandy would not be responsible for any expenses incurred by sales personnel.

Engleman worked as a sales representative for Gandy until October 2000. During that time, Engleman's commissions were paid on a different basis than was set out in the guidelines. Rather than paying Engleman commissions once a month, Gandy would estimate the amount of commission Engleman would earn over the course of the fiscal year and Engleman was allowed to draw against those estimated commissions to have an income on which to live and to service his accounts. On a regular basis, Gandy compared the amount of money Engleman drew to the amount of

commission he had earned and the amounts were reconciled. In addition, at Engleman's request, Gandy made monthly health insurance premium payments for Engleman, which were deducted from his commissions.

In October 2000, Gandy informed Engleman that his services for the company were being terminated. Engleman told Gandy he felt he was entitled to a commission on the fall 2000 tree sales to Home Depot because he had already secured the orders. Gandy stated he agreed to pay Engleman a commission on the sales made to Home Depot through December 2000 to "buy the peace." Gandy further stated that Engleman never informed him he was dissatisfied with the amount of the commission payment until he filed this suit.

Engleman testified he contacted a lawyer shortly after being terminated to discuss suing Gandy for unpaid commissions. The lawyer informed him that he did not feel the case was worth pursuing on a contingency fee basis. After talking with the lawyer, Engleman doubted the viability of his case and decided not to pursue it.

In April 2001, Engleman filed a voluntary petition for bankruptcy. In his petition, Engleman did not list his potential claims against Gandy as an asset. The bankruptcy proceeded routinely, and Engleman was discharged in July 2001.

Approximately two years later, Engleman discovered that another salesman had sued Gandy for unpaid commissions. In deposition testimony in that case, Gandy testified that salesmen who did not originate spread orders were not entitled to a commission. Based on this testimony, Engleman thought he might have a claim for unpaid commissions for sales to Home Depot in 2001 because he believed he had obtained a spread order from Home Depot for the first eight months of that year. In addition, Engleman decided to pursue a claim for commissions for all sales made to Home Depot after he was fired based on his contention that Gandy promised him a percentage of all Home Depot business. Engleman filed this suit on September 23, 2003, alleging he was owed commissions dating from before he was fired until Gandy sold its business to another company in 2003. Engleman based his claims for unpaid commissions solely on breach of contract.

During the course of discovery in the case, it was revealed that Engleman had voluntarily filed for and been discharged from bankruptcy in 2001. It was also revealed that Engleman failed to include his potential claims for unpaid commissions on his list of assets in the bankruptcy proceeding. After this was brought to Engleman's attention, he contacted Jason Searcy, the trustee in his bankruptcy action. Searcy successfully petitioned the bankruptcy court to reopen Engleman's bankruptcy case and Searcy amended the filings to include the claims against Gandy as an asset. The trial court then allowed Searcy to substitute himself as plaintiff in this case. Engleman contended he did not include the claims on his list of assets when he originally filed for bankruptcy because, at the time, he did not think his claims were viable.

Gandy moved for both a traditional and no-evidence summary judgment. In its motion for a no-evidence summary judgment, Gandy contended, among other things, that there was no-evidence of a valid and enforceable contract for commissions. Gandy's motion for a traditional summary judgment was based on its affirmative defenses of judicial estoppel, waiver, laches, and payment. Searcy moved for a partial summary judgment asserting Gandy had no evidence of its affirmative defenses of collateral estoppel, accord and satisfaction, estoppel and laches.

The trial court denied Searcy's motion for partial summary judgment and granted Gandy's motion for summary judgment. In its order, the court did not specify the ground or grounds upon which it relied. Searcy brings this appeal challenging all of the grounds for summary judgment asserted in Gandy's motion.

## II.

In his first issue on appeal, Searcy contends the trial court erred in granting Gandy's motion for summary judgment because there was evidence of a valid and enforceable contract. We disagree.

■ Whether an alleged agreement constitutes an enforceable contract is generally a question of law. *See Meru v. Huerta,* 136 S.W.3d 383, 390 (Tex.App.-Corpus Christi 2004, no pet.). The elements of a valid and enforceable contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *See Hubbard v. Shankle,* 138 S.W.3d 474, 481 (Tex.App.-Fort Worth 2004, pet. denied). The necessary elements of both written and oral contracts are the same and must be present for a contract to be binding. *Id.*

■ A contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. *See Meru,* 136 S.W.3d at 390. If the agreement upon which the plaintiff relies is so indefinite as to make it impossible for the court to determine the legal obligations and liabilities of the parties, it is not an enforceable contract. *Id.* Furthermore, to be legally binding, the parties must have a meeting of the minds and must communicate consent to the terms of the agreement. *Id.* The determination of a meeting of the minds is based on an objective standard of what the parties said and did rather than on their subjective state of mind. *See Wal–Mart Stores, Inc. v. Lopez,* 93 S.W.3d 548, 556 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

■ In this case, Searcy presented no evidence that Engleman and Gandy had a meeting of the minds on the essential terms of the alleged commission contract. Indeed, it is unclear, based on Searcy's contentions, what constitutes the essential terms of Engleman's alleged contract with Gandy. Searcy appears to contend that Engleman's agreement with Searcy is some combination of the written guidelines signed by both Engleman and Gandy and various alleged oral agreements between the parties. In some instances, however, the written guidelines contradict the alleged oral agreements. And with respect to many aspects of the commission payments made to Engleman, there is no evidence of any agreement at all.

For example, the summary judgment evidence shows that rather than being paid a straight commission, Engleman was allowed to draw against commissions to be earned in the future. At various times, the amount Engleman had drawn would be reconciled against the amount he had earned. Engleman presented no evidence of any offer or acceptance of these terms. Indeed, this arrangement is contrary to the terms set out in the written guidelines signed by the parties. The guidelines state that the salesman would not be paid a commission until the customer had paid the invoice. Accordingly, it is unclear what agreement Engleman had with Gandy on when and how he would be paid his commissions.

There also does not appear to be any agreement on what was necessary for a sales representative to earn a commission.

The guidelines stated a sales representative would earn a commission for accounts "sold and collected." Yet Searcy now contends Engleman was entitled to commissions on sales for which he merely produced a "spread order" for sales in the future. Although Searcy provided evidence showing that originating a spread order was a necessary part of earning a commission, he produced no evidence of any agreement between Engleman and Gandy that obtaining a spread order was sufficient, by itself, to entitle him to a commission.

Finally, Searcy relies heavily on Gandy's alleged promise to pay Engleman a percentage of all sales made to Home Depot. Searcy contends this promise applies to sales made even after Engleman's employment ended. The alleged promise by Gandy was made during the course of discussions with Engleman about his potential employment. Searcy presented no evidence to suggest that there was a meeting of the minds about whether Engleman would continue to receive commissions on sales to Home Depot even if he was no longer employed by Gandy.

Based on the foregoing, we conclude Searcy failed to provide any evidence sufficient to raise a fact issue on the existence of a valid and enforceable commission contract. There is no evidence of any meeting of the minds on the material terms of the alleged contract such to indicate the legal obligations and liabilities of the parties. Because we conclude summary judgment was proper on the ground that Searcy failed to provide any evidence of an enforceable contract, it is unnecessary for us to address the remaining issues raised by Searcy on appeal.

We affirm the trial court's judgment.