## SHIN–CON DEVELOPMENT CORPORATION and Hwan Soo Lee, Appellants,

v.

## I.P. INVESTMENTS, LTD., Appellee.

No. 05–07–01108–CV.

Court of Appeals of Texas, Dallas.

Nov. 24, 2008.

---

Robert J. Hill, Claxton & Hill, PLLC, Dallas, for Appellant.

Eric Francis Dankesreiter, Ryan D. Adair, Wigington & Dankesreiter, L.L.P., Flower Mound, for Appellee.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion by Justice MORRIS.

This is an appeal of a breach of contract case tried before a jury. The trial court rendered judgment in accordance with the jury's verdict and awarded "liquidated damages" plus attorney's fees and costs to I.P. Investments, Ltd. In twelve issues, Shin–Con Development Corporation and Hwan Soo Lee challenge the enforceability of the underlying contract, the damages award, the jury charge, the legal and fac-

tual sufficiency of the evidence, the exclusion of their expert witness testimony, and the award of attorney's fees. For the reasons that follow, we conclude the trial court erred in calculating damages, but we find no merit in appellants' remaining issues. Accordingly, we reverse the part the trial court's judgment awarding I.P. Investments, Ltd. "liquidated damages" in the amount of $883,179.42 and render judgment in favor of I.P. Investments, Ltd. and against Shin–Con Development Corporation and Hwan Soo Lee for $576,275 in accordance with this opinion. We affirm the trial court's judgment in all other respects.

## I.

At trial, the following facts were undisputed. Appellants and appellee own adjacent commercial property tracts, each of which contains a shopping center and parking lot.[1] The parties discussed exchanging easements to facilitate the traffic between the two properties. Appellants' tract, however, was encumbered by a vendor's lien, and the lienholders would not readily consent to the granting of an easement.

In November 1993, appellants and appellee signed a 30–month license agreement permitting vehicular and pedestrian access between their tracts along a shared boundary.[2] The license agreement granted each party the right to drive vehicles across, walk across, and traverse across the parking and driveway areas of each other's tract. Additionally, appellee agreed to pay appellants $50,000, and appellants agreed to remove a fence that was obstructing access between the shopping centers and to construct a driveway connecting the tracts. There were additional provisions with respect to permitted and prohibited barriers along the boundary. The license agreement further states:

> This license agreement is to set forth the terms and conditions agreed upon for the repairs and construction of improvements to the property, removal of certain impediments to the movement of vehicular and pedestrian traffic, for the execution of a mutual easement agreement, and for other cooperative and financial agreements among the parties.

Attached to the license agreement as "Exhibit C" was a document indicating that the license agreement was entered into "in contemplation of the Mutual Easement Agreement" and listing items forming the "basic contents of the Mutual Agreement to be effective in the future."[3] Among other things, "Exhibit C" provided that appellee would pay appellants a total of $300,000 for the mutual easement agreement. It also confirmed that the $50,000 appellee paid appellants under the license agreement was the down payment for the

1. Lee is president of Shin–Con Development Corp. and executed the documents relevant to this appeal as its representative and in his individual capacity. The tract currently held by appellee I.P. Investments was originally purchased by Odes H. Kim. Kim formed I.P. Investments and transferred title to the property to the company. Lee and Kim negotiated the agreement later described, and the pertinent documents refer to Kim in his individual capacity rather than appellee. For the purpose of clarity, however, we use appellee and appellants when referring to the duties and obligations created by the various documents.

2. Although the agreement indicated that an opening existed between the two properties, it provided that the exact location of the opening "shall be by metes and bounds description to be appended hereto at a later date." There is no indication in the record whether the metes and bounds description was ever created or appended to the agreement.

3. "Exhibit C" was written in Korean and translated into English. It was executed on the same day as the license agreement.

"Mutual Agreement" and that another $100,000 would be paid to appellants once they obtained the lienholders' signatures "verifying their agreement" and after the "Permanent Agreement" was entered into by the parties. It further provided that sixty days after the $100,000 payment, an additional $150,000 would be paid at ten percent per annum for ten years.[4]

In December 1993, appellee gave appellants $30,000, and appellants executed a promissory note providing, among other things, that in the event of a default, the parties' license agreement would be extended an additional forty months. In 1995, appellee gave appellants another $105,000, and the parties executed an addendum to their 1993 license agreement. The 1995 addendum provided that if appellants failed to obtain title to their property and execute a "permanent easement agreement" to appellee by January 31, 2003, they would forfeit the $185,000 they had received from appellees and pay eighteen percent annual interest on the unpaid balance from the date the addendum was signed. The addendum further provided that the license agreement "shall be extended to August 31, 2015." On the same day the addendum was signed, appellants also executed an unsecured promissory note to appellee for $185,000 to be repaid on demand no later than February 5, 2003.[5] The note provided an annual per-centage rate of eighteen percent per annum on the unpaid principal from the date of the note and an annual interest rate on the "matured, unpaid amounts" of eighteen percent per annum. Appellants received a release of vendor's lien from their lienholders in 1998. Appellants did not, however, execute a "permanent easement agreement" by the January 31, 2003 deadline. Nor did they return to appellee the $185,000 plus interest.

Appellee filed this suit seeking, among other things, $185,000 plus accrued interest and attorney's fees. Appellants filed a counterclaim asserting claims of breach of contract, fraud, quantum meruit, and unjust enrichment. The matter proceeded to trial. Appellee argued appellants owed it $185,000 plus interest because they failed to execute a permanent easement for appellee's benefit by January 31, 2003. Appellants, on the other hand, contended that because the addendum merely set a deadline for the parties to reach and finalize a future mutual permanent easement agreement, it was merely an agreement to agree and appellee was entitled to nothing on its claims.[6]

Pursuant to special questions, the jury found that the parties had agreed that a permanent easement was to be created, appellants failed to comply with the agreement, and appellee did not fail to comply with the agreement. The issue of dam-

---

4. "Exhibit C" also gave each party a right of first refusal to the other's property and indicated that under the Removal Obstructions section of the license agreement, "the three car traffic shall be stated two car traffic and a sidewalk, and the height of the piles installed along Denton Dr. shall be lowered [sic] than the current height." There was also a provision that other items not listed could be determined according to the agreement between the parties.

5. Although appellee's petition contained a separate cause of action against appellants based on the note, the trial court denied ap-pellee's request to submit this claim to the jury, and appellee does not complain about the trial court's denial on appeal.

6. At trial, a hotly contested issue was the meaning of the term "permanent easement agreement" as used in the addendum. Appellee presented evidence that it meant appellants had to actually submit an executed permanent easement to them by the deadline. Lee testified that it meant a mutual permanent easement agreement as that term was used in the license agreement.

ages was not presented to the jury. The trial court rendered judgment in accordance with the jury's liability verdict and awarded appellee $883,179.42 in "liquidated damages," $7,325.58 in court costs, and $135,000 in attorney's fees. This appeal followed.

## II.

■ In their first issue, appellants contend there is no enforceable contract between the parties because the alleged agreement lacks certain essential terms and is merely an agreement to agree in the future. Appellants also assert the parties' agreement is not enforceable because it violates the statute of frauds.

■ Whether an alleged agreement constitutes an enforceable contract is generally a question of law. *Searcy v. DDA, Inc.*, 201 S.W.3d 319, 322 (Tex.App.-Dallas 2006, no pet). To be legally enforceable, an agreement must be sufficiently definite to allow a court to understand what the promisor undertook. *See T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992). The rules requiring definiteness in a contract's material terms are based on the concept that a party cannot accept an offer unless the terms of that offer are reasonably certain. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex.2000). Accordingly, all essential terms of the agreement must be agreed upon before a contract may be enforced by the courts. *Stanley Boot Co.*, 847 S.W.2d at 221. If the agreement is so indefinite as to make it impossible for the court to determine the legal obligations of the parties, it is not an enforceable contract. *Searcy*, 201 S.W.3d at 322. Each agreement should be examined separately to determine its material terms. *Stanley Boot Co.*, 847 S.W.2d at 221.

Appellants assert the addendum merely set a deadline for the parties to enter into a future mutual permanent easement agreement. They further contend that, because the parties never actually reached an agreement on the description or nature of the easement to be conveyed or other material terms such as maintenance, the addendum is unenforceable.

At the time they signed the license agreement, the parties clearly intended to enter into a future mutual easement agreement. In fact, "Exhibit C" to the license agreement provided basic terms to be included in the parties' future mutual easement agreement. The parties' 1995 addendum, however, provided that if appellants failed to execute a "permanent easement agreement" by the stated deadline, they would return appellee's $185,000 plus interest. Appellants argue that because the parties never reached a mutual permanent easement agreement, the addendum is unenforceable. Appellants' argument is misdirected. There is nothing in the addendum or the other documents in the record requiring appellants to execute either a mutual permanent easement agreement or a permanent easement to appellee. The addendum merely required appellants to return to appellee $185,000 plus interest in the event appellants failed to execute "a permanent easement agreement." Appellants' argument assumes the addendum required the parties to reach an easement agreement before appellants had a duty to execute anything. Nothing in the record supports this assumption, however. Even if essential terms were missing from the parties' future permanent easement agreement, such omissions would not render unenforceable the requirement to return monies advanced should they fail to reach an agreement within the designated time frame.

■ For the same reasons, we reject appellants' contention that the parties' agreement violated the statute of frauds because their agreement lacked the essential terms of the easement and an adequate description of the easement. As noted above, appellee is not trying to enforce a promise to execute an easement or easement agreement but rather to enforce appellants' obligation to repay monies upon their failure to execute an easement or easement agreement by the stated deadline.[7] We resolve appellants' first issue against them.

■ In their fourth, fifth, sixth, and seventh issues presented in this appeal, appellants complain about the trial court's jury charge.[8] Appellants' challenges focus on the existence and nature of an enforceable easement agreement, whether appellants' failure to comply with the easement agreement was material, and whether appellant's failure to comply was excused.

■ We review charge error under an abuse of discretion standard. *See Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex.2006); *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). To obtain reversal of a judgment based on charge error, appellants must show the claimed errors probably caused the rendition of an improper judgment. *See* Tex. R.App. P. 44.1(a)(1). After reviewing the record before us, we conclude that appellants have failed to demonstrate any reversible error in connection with their jury charge complaints. It is undisputed that the parties never entered into a mutual permanent easement agreement. There is also nothing in the record to support the conclusion that such an agreement had to be reached before appellee could seek the return of the money paid to appellants. The record conclusively establishes that under either party's interpretation, appellants failed to execute a "permanent easement agreement" and failed to return any of appellee's money after the deadline had passed. Thus, issues relating to the formation and interpretation of an agreement the parties never reached were immaterial to the rendition of a proper judgment in this case. We resolve appellants' fourth, fifth, sixth, and seventh issues against them.

■ In their eighth and eleventh issues, appellants complain about the sufficiency of the evidence to support the jury's liability findings and also claim the jury's findings are immaterial because there was no agreement between the parties. With respect to the jury's findings, the jury determined that the parties agreed a permanent easement was to be created and that appellants failed to comply with the agreement. These findings, however, are immaterial based on our conclusion that such an agreement was not required for appellees to recover under the addendum. Specifically, the addendum provides, "If [appellants fail] to obtain title to the property described in the License Agreement, and execute a permanent easement agreement . . . by January 31, 2003, [appellants] shall forfeit and pay all of the money received from [appellee]." The use of the term "if" connotes a condition precedent that conditions performance rather than a

---

7. The parties' dispute with respect to the meaning of "permanent easement agreement" as used in the addendum is of no consequence to the disposition of this case. The record conclusively establishes appellants failed to execute a "permanent easement agreement" under either party's definition.

8. Appellants complain about the trial court's refusal to submit their requested instructions and questions with respect to (1) contract formation and interpretation of ambiguous language, (2) failure to comply, and (3) excused failure to comply.

covenant or promise. *See Progressive County Mut. Ins. Co. v. Trevino,* 202 S.W.3d 811, 814 (Tex.App.-San Antonio 2006, pet. denied). Here, the parties' agreement merely provided that appellants would have to return all money advanced to them by appellee plus interest in the event they failed to execute a permanent easement agreement by the stated deadline. Based on the record before us, appellants' agreement to return the money and appellants' subsequent breach of that agreement were established as a matter of law and appellants cannot establish any reversible error in connection with the jury's immaterial findings. Under their eighth issue, appellants also make the conclusory statements that there was no evidence of actual damages and the amount of damages for breach of contract is limited to just compensation. Because appellants provide no analysis or authority to support these contentions, they are waived on appeal. *See* Tex.R.App. P. 38.1(h). We therefore resolve appellants' eighth and eleventh issues against them.

■■■ In their ninth and tenth issues, appellants challenge the trial court's failure to submit their proposed jury questions 8, 9, and 10 and the trial court's exclusion of their expert testimony showing the value of the parties' license agreement to appellee from December of 1993 through trial. Under issue nine, which challenges the omission of the jury questions, appellants merely recite the excluded questions and provide two conclusory sentences without any analysis or legal authority to support their contentions. Thus, appellants have waived this issue by inadequate briefing. *See* Tex.R.App. P. 38.1(h). Similarly, appellants' argument under issue ten is comprised of a single paragraph that contains no analysis or legal authority other than the standard for reversible error applicable to challenges to

the trial court's exclusion of evidence. Accordingly, this issue has also been waived on appeal. *See* Tex.R.App. P. 38.1(h).

■■■ In their second issue, appellants complain about the trial court's damages award. They assert that the liquidated damages clause in the addendum was an illegal penalty or forfeiture. Whether a contract term is a liquidated damages clause is a question of law for the court. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 664 (Tex.2005). Liquidated damages clauses fix in advance the compensation to a party accruing from the failure to perform a specified contractual obligation. *Id.* The provision in the addendum, however, is different from a liquidated damages clause. Here, the specific contractual obligation appellants failed to perform and for which appellee sought recovery was the return of the money paid plus interest. Thus, appellee's actual damages under the addendum were the amount appellants agreed to repay appellee if they failed to execute an easement agreement. The damages were liquidated in the sense that they could be calculated from the factual allegations in appellee's petition and an instrument in writing. *See Pentes Design, Inc. v. Perez,* 840 S.W.2d 75, 79 (Tex.App.-Corpus Christi 1992, writ denied) (defining liquidated damages in default judgment context). Accordingly, we find no merit to appellants' argument that the damages awarded by the trial court were based on an unenforceable liquidated damages clause. Moreover, to the extent appellants argue the issue of actual damages should have gone to the jury, they have not identified a fact issue that required resolution by a jury. The amount of damages due appellee could be readily determined by a calculation using the figures and interest rate set forth in the parties' addendum. We resolve appellants' second issue against them.

In their third issue, appellants contend the trial court incorrectly calculated the amount of damages because the addendum on which its calculation was based did not include compound interest. Appellee, on the other hand, argues the trial court properly computed damages based on the 1995 unsecured promissory note in evidence, which expressly authorized the compounding of interest after maturity. We agree with appellants. However, to the extent appellants argue the trial court erred in including in its damages award the $50,000 appellants received for the license agreement and the $10,000 they received for removing the remaining fence, appellants have waived this assertion on appeal by failing to provide any discussion or legal authority to support their position. *See* Tex.R.App. P. 33.1(h). Furthermore, we note the addendum specifically required repayment of these amounts.

Although executed on the same day, the note and addendum were distinct documents and appellants' liability under each was a separate issue. The issue of appellants' liability under the promissory note was not submitted to the jury. Unless a theory of recovery is established as a matter of law, a judgment cannot be rendered on a ground that was not submitted to the jury. *See* Tex.R. Civ. P. 279. The addendum does not make any reference to the unsecured promissory note with respect to the interest calculation on the $185,000. Instead, the addendum provides for eighteen percent annual interest on the unpaid amount from the date of the addendum's execution. Because the addendum did not provide for compound interest, it was error for the trial court to include such interest in its damages calculation. Accordingly, we resolve appellants' third issue in their favor. The trial court should have calculated the eighteen percent simple interest from the date of the addendum to the judgment date as follows: $185,000 × .18 × 11 and 3/4 years = $391,275. Adding the accrued interest of $391,275 to the principal amount of $185,000 brings the total damage award to $576,275.

In their twelfth issue, appellants contend the trial court erred in awarding attorney's fees to appellee because there was no evidence that appellee presented its contract claim to them as required under section 38.002(2) of the Texas Civil Practice and Procedure Code. Appellee counters that it did not need to provide proof of presentment because it pleaded all conditions precedent were performed or occurred and appellants failed to deny specifically which conditions precedent to the recovery of attorney's fees had not been met.

One of the prerequisites to recovering attorney's fees under chapter 38 is presentment of the underlying claim to the opposing party. Texas Civil Practice and Procedure Code 38.002(2) (Vernon 2008). It is the claimant's burden to plead and prove presentment. *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex.1983). But when a claimant avers in its petition that all conditions precedent to recovery have occurred or have been performed, it is required to prove only those conditions precedent that have specifically been denied by the opposing party. *See* Tex.R. Civ. P. 54.

Our review of the record reveals appellee pleaded all conditions precedent had been performed or occurred. In their responsive pleading, however, appellants merely asserted that, "The plaintiffs have not satisfied a condition precedent." By failing to specifically deny that appellee failed to present its contract claim as required by statute, they have waived their right to complain of such failure on appeal. *See Gill Sav. Assn. v. Int'l Supply Co., Inc.*, 759 S.W.2d 697, 701 (Tex.App.-Dallas

1988, writ denied). We resolve appellants' twelfth issue against them.

In conclusion, we reverse that part of the trial court's judgment awarding I.P. Investments, Ltd. "liquidated damages" in the amount of $883,179.42 and render judgment in favor of I.P. Investments, Ltd. and against Shin–Con Development Corporation and Hwan Soo Lee in the amount of $576,275 in accordance with this opinion.

We affirm the trial court's judgment in all other respects.