# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00033-CV

**Laura Marie Stone Mahon, Appellant**

**v.**

**Michael Joseph Mahon, Appellee**

**FROM THE COUNTY COURT AT LAW NO. 4 OF WILLIAMSON COUNTY,
NO. 10-2382-FC4, HONORABLE JOHN McMASTER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This appeal is from the trial court's rendition of a final divorce decree (the "Decree") by which the court made an implied finding that a separate document styled "Agreed Final Decree of Divorce" (the "Divorce Agreement") was not a valid and enforceable agreement between the parties. Appellant Laura Mahon, now Laura Stone (hereinafter "Stone"), raises four issues on appeal: (1) whether the Divorce Agreement was enforceable as a Rule 11 agreement; (2) whether the Divorce Agreement was enforceable as a Rule 11 agreement even though the appellee, Michael Mahon, had withdrawn his consent before it was filed with the trial court; (3) whether the trial court should have enforced the Divorce Agreement as an oral agreement; and (4) whether the trial court should have enforced the provision of the Divorce Agreement regarding contractual alimony. All of Stone's issues depend on the assumption, contrary to the trial court's implied finding, that the

parties had a meeting of the minds whereby they agreed to enter into a binding agreement. We will affirm the Decree.

**BACKGROUND**

In August 2010, Mahon filed for divorce from Stone. Thereafter, Mahon and Stone engaged in negotiations over the terms of their divorce. In October 2010, Stone hired a lawyer to prepare the Divorce Agreement. Stone offered the Divorce Agreement to Mahon as a final resolution of their divorce. On October 27, 2010, Mahon and Stone met at a bookstore where they spent two hours discussing the proposed terms of the Divorce Agreement. A provision of the Divorce Agreement concerning contractual alimony stated that the parties "stipulate and agree that the following provisions regarding alimony shall be binding on the parties as a contract, enforceable as a contract, and modifiable only upon the written notarized consent of the parties." Despite this language, Mahon and Stone made several unnotarized, handwritten modifications to the alimony provisions during their meeting at the bookstore. After hours of discussion, Mahon left the store, stating that he wanted to have a lawyer look over the document before he signed it. Mahon testified that Stone followed him to his car and stood behind or near the back of the car, apparently preventing him from leaving until he signed the agreement. Mahon testified that he felt pressured to sign the agreement and did so despite wanting to have a lawyer review it.

Exhibits introduced at trial indicate that Mahon and Stone thereafter continued to discuss the terms of their divorce through email. On October 28, 2010, Stone sent an email to Mahon stating, "I thought you were going to send me your ideas this morning written out . . . I have about a half hour break and was wanting to look at what you are suggesting." On November 1, 2010,

2

Mahon wrote Stone an email revoking his consent to the Divorce Agreement: "After further consideration given that we have verbally agreed to renegotiate the terms of the final decree with regard to the listing date of the house and the terms of financial compensation, I summarily contest the terms of the signed final decree." Stone responded on November 2, 2010, in an email that stated: "What are you talking about? What do you want to agree to now?" On November 3, 2010, she sent another email that stated:

> I have no idea what you are talking about and why you are requesting this. I would like to meet with you to discuss what is going on and resolve whatever the issues are. I would like to meet every time we need to talk about us and the divorce. I think that is why there is now this confusion you are talking about. I seriously don't understand what is going on Mike. What has happened??? Are you available tonight after work? Or, I can be available most of the rest of the week. Please let me know when you are available to meet.

The same morning she sent this second email, and unbeknownst to Mahon, Stone appeared in court for the uncontested docket at which she convinced the court to sign the Divorce Agreement as an agreed order. Stone testified that she never understood that Mahon had revoked his consent or agreement to the terms of the Divorce Agreement. Stone further testified that she did not believe they were still negotiating the terms of the Divorce Agreement, although she stated that Mahon was "still talking about it."

Mahon timely filed a motion for new trial, which the trial court granted.[1] Before the new trial was granted and again after it was granted, Stone filed the Divorce Agreement with the

---

[1] After Mahon filed his motion for a new trial, Stone retained counsel and agreed to the granting of the motion.

court as a Rule 11 agreement. She then filed a motion for summary judgment seeking to enforce the Rule 11 agreement. Mahon opposed the motion, asserting that there had never been a meeting of the minds and therefore the Divorce Agreement was not an enforceable agreement. The trial court denied Stone's motion for summary judgment. At the final hearing, Stone again asked the trial court to enforce the Divorce Agreement as a Rule 11 agreement. Without stating the grounds, the trial court refused to enforce the Divorce Agreement and instead signed the Decree, which contained provisions different from those in the Divorce Agreement. Implicit in the Decree is a finding that the Divorce Agreement was not a valid or enforceable agreement. Stone did not request findings of fact or conclusions of law. This appeal followed.

## DISCUSSION

When neither party requests findings of fact and conclusions of law, it is implied that the trial court made all findings necessary to support the judgment or order. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Thus, the trial court here impliedly found that the Divorce Agreement was not a valid, enforceable agreement. Stone argues that the evidence conclusively shows that it was a valid and enforceable agreement. If more than a scintilla of evidence supports the trial court's implied finding, a legal-sufficiency challenge fails. *Id*. For an agreement to be enforceable, there must be a meeting of the minds with respect to the agreement's subject matter and essential terms. *Ludlow v. DeBerry*, 959 S.W.2d 265, 272 (Tex. App.—Houston [14th Dist.] 1997, no pet.). When one party disputes the existence of a meeting of the minds, the existence of an enforceable agreement is a question of fact. *Hallmark v. Hand*, 885 S.W.2d 471, 474, 476 (Tex. App.—El Paso 1994, writ denied). The determination of whether there was a

4

meeting of the minds employs an objective standard of what the parties said and did, not their subjective state of mind. *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied).

Here, we conclude that the evidence in the record is sufficient to support the trial court's implied finding that no meeting of the minds existed between Mahon and Stone. The emails between Mahon and Stone mention the ongoing input of "suggestions" and "ideas," oral agreements to "renegotiate," and "confusion" about the terms of the divorce. The emails reveal that disagreements and unresolved issues about the terms of the divorce existed. The court could reasonably infer, therefore, that the parties' negotiations were still ongoing and that no meeting of the minds as to the essential terms of the divorce had yet occurred.

Although the Divorce Agreement recited that it was "a full and complete resolution to this case," the parties' own behavior—e.g., adding unnotarized handwritten amendments to a provision of the document even though the document required changes to be notarized—is evidence that the parties lacked a meeting of the minds on the final terms of the Divorce Agreement. Further, the continuing negotiations after Mahon signed the Divorce Agreement on October 27, in addition to the evidence of pressure that Stone put on Mahon to sign the agreement by blocking his car, support a finding that no meeting of the minds had occurred.

Although Stone may have subjectively believed that there was a meeting of the minds, the parties' subsequent communications and the objective circumstances surrounding those communications and the original signing of the document constitute more than a scintilla of evidence that assent to the Divorce Agreement's terms had not occurred. *See Searcy v. DDA, Inc.*,

5

201 S.W.3d 319, 322 (Tex. App.—Dallas 2006, no pet.) ("The determination of a meeting of the minds is based on an objective standard of what the parties said and did rather than on their subjective state of mind.").

Because there is sufficient evidence to support the trial court's implied finding that there was no meeting of the minds and, therefore, that the Divorce Agreement was not an enforceable agreement, we overrule Stone's appellate issues.

## CONCLUSION

Having overruled Stone's appellate issues, we affirm the Decree rendered by the trial court.

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   July 27, 2012

6