**2026 Tex. Bus. 3**



## The Business Court of Texas, First Division

| | | |
|---|---|---|
| ESTEBAN QUINTERO and ATS CONCRETE SERVICES, LLC, *Plaintiffs*, | § § § § | |
| v. | § § | Cause No. 25-BC01A-0022 |
| URBAN INFRACONSTRUCTION LLC and ANUP TAMRAKAR, *Defendants*. | § § § § | |

### Memorandum Opinion and Order on Issues Under Rule 166

¶1 Before the Court is the parties' Rule 166 briefing, which the Court ordered at the pre-trial hearing held on October 20, 2025, concerning issues "in the case [that] may be susceptible to adjudication as a matter of law." Order on Defs' Mtn. for PSJ, Pls' Mtn. for Cont., and Pres. of Issues Under R. 166 ("October 22 Order") at ¶ 2; *see also* Tex. R. Civ. P. 166(g); *JP Morgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C*, 546 S.W.3d 648, 653 (Tex. 2018).

Having carefully examined the pleadings, timely-filed briefing and timely-filed evidence in the summary judgment and Rule 166 record, and taking judicial notice of the parties' previous testimony to the Court in this matter, the Court ORDERS partial judgment in this case as follows.

## I.    Rule 166, Standard of Review, and Burdens of Proof

¶2    Rule 166 allows a trial court—in its discretion—to direct the parties and their counsel to appear before the court for a conference in order "to assist [the Court] in the disposition of the case without undue expense or burden to the parties." Tex. R. Civ. P. 166. Subsection (g) allows the Court to identify legal issues ripe for adjudication before the commencement of trial. Tex. R. Civ. P. 166(g); *JPMorgan Chase Bank*, 546 S.W.3d at 653.

¶3    Aside from ruling on legal issues and disposing of claims and defenses as a matter of law, *see Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 326 (Tex. App.—Houston [14th Dist.] 2003, pet. denied), Rule 166(g) also permits the Court "to decide matters that, though ordinarily fact questions, have become questions of law because 'reasonable minds cannot differ on the outcome,'" *JPMorgan Chase Bank*, 546 S.W.3d at 653 (quoting *Walden*, 97 S.W.3d at 322). A Rule 166(g) order disposing of claims in which fact questions have become legal questions "is akin to a summary judgment

or directed verdict." *Walden*, 97 S.W.3d at 323; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) (equating legal sufficiency test "for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review").

¶4     As there is no "movant" or "non-movant" in this context, judgment in favor of a defending party is appropriate where it has shown that "there is no genuine issue as to any material fact" and the party "is entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c); *see Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). Such a judgment may be supported by "uncontroverted testimonial of an interested witness . . . if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex. R. Civ. P. 166a(c).

¶5     Judgment in favor of a defending party is not proper if the party prosecuting the claim "brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "Judgment without or against a jury verdict is proper at any course of the proceedings only when the law does not allow

reasonable jurors to decide otherwise." *JPMorgan Chase Bank*, 546 S.W.3d at 653 (quoting *City of Keller*, 168 S.W.3d at 823).

## II. Plaintiffs' Claims

### A. Claims Based on Quintero's Status as a Member of Urban LLC

¶6    Plaintiffs ask the Court to reconsider the October 22 Order granting summary judgment on all claims predicated on Plaintiff Quintero's claimed status as a member in Urban Infraconstruction LLC ("Urban LLC"). Plaintiffs argue that new evidence "prove[s] Quintero's claims that he is a member of Urban and contributed capital to become a member." Pls' New Evid. Brief and Req. to Reconsider (unredacted) ("Pls' R. 166 Brief") at p. 3. The Court finds that the new evidence proffered does not raise a fact issue on whether Quintero is a member of Urban LLC.

¶7    There remains no question that the business Quintero refers to as "the Urban partnership" (*see* Pls' Pet. at ¶¶ 6, 10, 26) is a formally organized Texas limited liability company. *See* Defs' PSJ Mtn. Ex. 1-A. And as a matter of law, a limited liability company cannot be a general partnership, nor can a general partnership be a limited liability company. TEX. BUS. ORG. CODE § 152.051(c); *see Super Star Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 839 (Tex. App.—Corpus Christi-Edinburg 2017) (stating that LLC

"created under the business organizations code statute governing limited liability companies, by default is not a partnership"). Accordingly, the Court looks solely for evidence that Quintero became a member of Urban LLC—a limited liability company.

¶8 The Court previously ruled Quintero is not a member of Urban LLC. *See* October 22 Order at ¶ 1(a). Quintero argues he is a member, but his pleadings are unclear as to how his membership was effectuated. From the outset, and consistently over the course of the case, Plaintiffs have presented a multitude of irreconcilable theories.

- Plaintiffs pleaded: "To be clear, Quintero has maintained his partnership interest with Tamrakar in both Urban and ATS at all times. His partnerships with Tamrakar are the sole member of Urban and ATS." Pls' Pet. at ¶ 26.

- Simultaneously, Plaintiffs pleaded: "Tamrakar and Quintero are equal partners/members in Urban and ATS." Pls' Pet. at ¶ 37.

- At summary judgment, Plaintiffs argued, "Tamrakar had an absolute duty of candor to inform Quintero (1) that "Urban Infraconstruction LLC" was not the same as 'Urban Infraconstuction' the partnership they formed" and "(4) that he

executed a secret operating agreement making himself the sole 'member' of Urban Infraconstruction LLC." Pls' Resp. to PSJ Mtn. at p. 10.

- And most recently: "The forgoing new evidence, when taken with the evidence already gathered in this case, confirms Quintero is a member in Urban, having invested in Urban at the outset *as a member*" and "the recently produced documents confirm Plaintiff Quintero's claims that he and Amador's contributions were capital contributions to Urban, and that they were owners and members in Urban." Pls' R. 166 Brief at pp. 15, 17 (emphasis in original).

While Quintero asserts numerous claims predicated on his alleged status as a member of Urban LLC, his pleadings and briefing are inconsistent and unclear on how he contends he became a member.

¶9 The Court thus turns to the Texas Business Organizations Code to determine whether Quintero has provided *any* evidence of *any* event that would, by law, support Quintero's claim of membership in Urban LLC. The statue defines a "member" of a limited liability company as "a person who has become, and has not ceased to be, a member in the limited liability company

as provided by its governing documents or [the Texas Business Organizations Code]." Tex. Bus. Org. Code § 1.002(53). In the instant case, it is undisputed that Urban LLC's governing documents do not identify Quintero as a member of the company.

¶10 Section 101.103 of the Texas Business Organizations Code provides three ways in which a person may become a member of a limited liability company. Tex. Bus. Org. Code § 101.103. First, "a person becomes a member of the company on the date the company is formed if the person is named as an initial member in the company's certificate of formation." *Id.* Here, again, it is undisputed that Quintero is not identified as an initial member of Urban LLC in Urban LLC's Certificate of Formation. *See* Defs' PSJ Mtn. Ex. 1-A.

¶11 Next, a person "not named as an initial member in the company's certificate of formation becomes a member" upon the latest of three events: "(1) the date the company is formed; (2) the date stated in the company's records as the date the person becomes a member of the company; or (3) . . . the date the person's admission to the company is first reflected in the company's records." Tex. Bus. Org. Code § 101.103(b). In this case, there is simply no evidence in the record that any of these events ever occurred. It is

undisputed that no company records affirmatively identify Quintero as a member of Urban LLC.

¶12   Finally, Section 101.103 provides: "[a] person who, after the formation of a limited liability company, acquires directly or is assigned a membership interest in the company or is admitted as a member of the company without acquiring a membership interest becomes a member of the company on approval or consent of all of the company's members." TEX. BUS. ORG. CODE § 101.103(c).   Quintero does not contend he was admitted as a member *after* Urban LLC's formation, making this provision inapposite. In fact, Quintero does not plead or offer proof that he *ever* sought or obtained admittance as a member to a limited liability company. Rather, Quintero unequivocally testified to having believed he and Tamrakar (with or without Amador) were forming an oral general partnership. *See* Pls' Pet. at ¶ 10; Quintero Aff.[1] at ¶ 3; TI hearing transcript at pp. 46-49. There is simply no evidence that Quintero was admitted as a member of Urban LLC, and the Court cannot manufacture such status in place of the consideration for which

---

[1] References to "Quintero Aff." refer to the affidavit attached to Plaintiffs' response to Defendants' motion for partial summary judgment.

Quintero pleaded and testified he actually bargained—an interest in an oral general partnership.

¶13   Plaintiffs' request for reconsideration of summary judgment cites new evidence which consists of Urban LLC's 2015 Balance Sheet, a document reflecting "Owner Equity" of $40,276.26.[2] *See* Pls' R. 166 Brief App. at p. 2. Plaintiffs argue that Quintero's $10,000 deposit proves that he is a member of Urban LLC. But Plaintiffs cite no case law for the proposition that evidence of a deposit, standing alone, evidences admission as a member of a company— and the Court has found none. *Cf.* TEX. BUS. ORG. CODE § 101.102 (stating that capital contribution is not required to acquire membership in LLC). As a matter of fact, Texas law is clear that a company's distributions shall be allocated amongst the members of the company "on the basis of the agreed value of the contributions made by each member, *as stated in the company's records required under Section 101.501.*" *Sohani v. Sunesara*, 546 S.W.3d 393, 407 (Tex. App.—Houston [1st Dist.] 2018) (emphasis in original); *see* TEX. BUS. ORG. CODE § 101.201. Oral testimony of a contribution to a limited

---

[2] The parties agree that this amount includes a $10,000 deposit from Quintero. The parties dispute whether Quintero's $10,000 deposit was a loan—as Tamrakar contends—or a capital contribution as a member and owner—as Quintero contends.

liability company must be accompanied by "written evidence or records of the [company] demonstrating his contributions." *Sohani*, 546 S.W.3d at 407; *see* TEX. BUS. ORG. CODE § 101.501 (listing company records, which does not include balance sheets).

¶14 The *Sohani* case is similar to this one. *See generally Sohani*, 546 S.W.3d 393. There, three individuals—two related, and the third a friend— having known each other for decades, went into business together. Multiple business entities were formed, and Sunesara sought to demonstrate his entitlement to one-third of the profits of three limited liability companies based on his testimony of contributions to those entities. *See id.* at 407. But the appellate court rejected Sunesara's arguments, relying on the express statutory language in Sections 101.201 and 101.501 of the Texas Business Organizations Code. *See id.* The court determined that "[a]ccepting Sunesara's argument that his oral testimony that he made contributions to the LLCs establishes his entitlement to [profits], in the absence of any written evidence or records of the LLCs demonstrating his contributions, would be contrary to the plain language of both section 101.201 and section

101.501(a)(7)."[3] *Id.* The court thus held that "[b]ecause Sunesara was not assigned a share of profits in the company agreements and presented no evidence that he was entitled to a one-third share of profits in the LLCs, he was not entitled to a share in profits as a matter of law." *Id.* at 408. The instant case is no different: Plaintiffs' new evidence does not create a fact issue as to whether Quintero is a member of Urban LLC, as it is indistinguishable from Sunesara's testimony of his own contributions in *Sohani.*

¶15 Quintero has submitted no evidence of admission as a member of Urban LLC "as provided by its governing documents or" the Code. *See* TEX. BUS. ORG. CODE §§ 1.002(53)(A); 101.103. And as demonstrated in the Code, membership is not contingent upon—or proven by—evidence of a capital contribution to the company. TEX. BUS. ORG. CODE § 101.102(b). There is no evidence raising a genuine issue of material fact on whether Quintero is a member of Urban LLC. The Court re-states its previous conclusion that, as a matter of law, he was not.

---

[3] Sunesara did attempt to furnish written evidence in the form of a tax return and company records from earlier-formed entities but the appellate court held that Sunesara had not provided any law establishing that "the records from the earlier-formed entities became records of the new LLCs." *Sohani,* 546 S.W.3d at 407. Those records thus did not establish ownership in the LLCs at issue. *Id.*

¶16    To the extent Quintero may be contending, through his various pleadings and arguments, that a partnership was formed with Tamrakar, and that such *partnership* became a member of the LLC, the same problems follow. There is no evidence that a partnership acquired membership according to the company's governing documents or the Code. And importantly, even if such a theory was supported by some evidence, it would not entitle Quintero to relief because he has not sued on behalf of any alleged partnership; Quintero would not be entitled to relief in his individual capacity for claims belonging to that partnership. *See Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 779-80 (Tex. 2020).

¶17    Consequently, summary judgment was properly granted in favor of Defendants on all Plaintiffs' claims predicated on Quintero's claim that he is a member of Urban LLC. The Court again, on reconsideration, ORDERS judgment in favor of Defendants on such claims, specifically: declaratory judgment that Quintero is, among other things, a founding partner of Urban LLC, demand for accounting and to inspect Urban LLC's books and records, and breach of fiduciary duties with respect to Urban LLC, as well as breach of

contract relating to an accounting, inspection of books and records, and other rights, including profits, from Urban LLC.[4]

## B.     Breach of Contract

¶18   Plaintiffs sued Defendants for breach of contract citing a partnership agreement that purportedly governed the Urban partnership ("the Urban partnership agreement") and a second partnership agreement that purportedly governed ATS. *See* Pls' Pet. at ¶ 33. "Whether an alleged agreement constitutes an enforceable contract is generally a question of law." *Shin-Con Dev. Corp. v. I.P. Invs., Ltd.*, 270 S.W.3d 759, 765 (Tex. App.—Dallas 2008, pet. denied). As per its October 22 Order, the parties briefed whether the alleged Urban partnership agreement was sufficiently definite to be enforceable. Having examined the briefing, the Court determines that the issue must be resolved as a matter of law in favor of Defendants.

¶19   Quintero maintains that in 2015, he, Meliton Amador, and Tamrakar entered into an "agreement to form a partnership to perform construction services, to be equal owners in the business, and to share equally

[4] The Court notes that Plaintiffs relied solely on Quintero's alleged status as a member of Urban LLC as the basis for contractual relief and offered no argument or evidence of any separate contract that would entitle Quintero to an accounting, inspection of books and records, or a share of the profits of Urban LLC.

in the profits of the business" ("the Urban Partnership"). Pls' Pet. at ¶ 13; *see* Quintero Aff. at ¶ 3. In pursuit of this endeavor, each agreed to contribute $20,000 cash. *See* Pls' Pet. at ¶ 13; Quintero Aff. at ¶ 4. Quintero claims he contributed $10,000 cash and $10,000 in the form of a truck and a trailer. *See id.* at ¶ 5. According to Quintero, the three also agreed to quit their full-time jobs and to work at Urban at a reduced salary for some time. *See* Pls' Pet. at ¶ 13; Quintero Aff. at ¶ 6.

¶20 Other terms included monies to Quintero to "build a modest house in Mexico," to "purchase ranch land outside of Dallas," to "pay private school tuition for Quintero's children," and to make "charitable donations to Quintero's church and home town in Mexico from time to time, as opportunities presented themselves." Pls' Pet. at ¶ 15. The only written evidence proffered by Quintero of these promises is a children's menu from Hoffbrau Steak & Grill House with handwritten bullet points purporting to list the promises made ("the Hoffbrau Kids Menu"). *See* Pls' Resp. to PSJ Mtn. at p. 111. No names or signatures appear on the Hoffbrau Kids Menu. *See id.*

¶21 As evident in their Petition, the failure to keep these alleged promises formed the basis of Plaintiffs' breach of contract claim. Specifically, Plaintiffs pleaded:

Tamrakar entered into a partnership agreement to form and operate Urban. Tamrakar and Urban have breached the partnership agreements with Quintero by, among other things: a. failing to distribute profits to Quintero in an amount equal to distributions made to Tamrakar or his designees; b. . . . diverting profits by overpaying Tamrakar salary and bonuses; c. . . . paying Tamrakar salary and bonuses far in excess of those paid to Quintero, without Quintero's consent or agreement; . . . f. failing to pay school tuition for Quintero's children; g. failing to purchase a ranch in Texas in Quintero's name; h. failing to pay to complete construction of the house in Mexico; . . . k. failing to make charitable donations to Quintero's church.

Pls' Pet. at ¶ 33.

¶22 Now, Plaintiffs claim that certain promises—including school tuition, the ranch in Texas, a home in Mexico, etc.—were not a part the Urban partnership agreement. Plaintiffs now argue: "In an attempt to characterize the parties [sic] agreements as 'lacking essential and definite terms' *Defendants* first create a strawman, pointing the Court to the Hoffbrau Kids Menu. Defendants then *falsely assert* that the Kids Menu reflects the 'material terms' of Plaintiff Quintero's oral agreement with Tamrakar to form Urban LLC . . .." Pls' Resp. to Defs' R. 166 Brief at ¶ 34 (second emphasis in original). Plaintiffs add that "Tamrakar's and Quintero's emails regarding that Kids Menu confirm the fact those 'life goals' were not a material part of their *original* agreement, or even their recommitment to that agreement." *Id.* at ¶¶

34, 38 (emphasis in original). Litigants cannot change horses midstream. Having pleaded that what they now characterize as "life goals" were, in fact, promises made as part and parcel of the Urban partnership agreement, the Court treats them as such.

¶23   "[T]o be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook." *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). "If the agreement upon which the plaintiff relies is so indefinite as to make it impossible for the court to determine the legal obligations and liabilities of the parties, it is not an enforceable contract." *Searcy v. DDA, Inc.*, 201 S.W.3d 319, 322 (Tex. App.—Dallas 2006, no pet.).

¶24   Here, the specific items are facially indefinite. Not only do the terms lack any deadline for performance, but they are also devoid of any reference to a verifiable size, amount, or value. A "ranch" might be fifteen hundred acres to a native Texan, or twenty to a northern urbanite. The term concerning school tuition is equally vague, capable of including any number of educational pursuits. In point of fact, in an email to Tamrakar, Quintero describes the house to be constructed in Mexico as "[n]othing too extravagant" and the ranch in Texas to be presumably large enough for "horses, sheep, and

some poultry." Pls' Resp. to PSJ Mtn. at p. 108. Moreover, one of Quintero's children's tuition would include tuition for a trade school but the others "have to earn it." *Id.* No reasonable fact-finder could determine when, if ever, any attempted performance of such promises was sufficient or complete. Accordingly, the Court ORDERS judgment as a matter of law in favor of Defendants on Plaintiffs' claims for breach of contract arising out of a purported Urban partnership agreement.

## III. Defendants' Affirmative Defense of Limitations

¶25 The October 22 Order partially granted Defendants' motion for partial summary judgment on Plaintiffs' fraud claims, concluding that they were barred by the four-year statute of limitations. *See* October 22 Order at ¶ 1(b); *see also* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4); *Anderson v. Cocheu*, 176 S.W.3d 685, 690 (Tex. App.—Dallas 2005). By this order, the Court clarifies its prior order as to fraud and amends the order to include Plaintiffs' claims for unjust enrichment.

### A. Fraud

¶26 As to fraud, the Court ordered that "limitations bars fraud claims of Quintero arising from alleged misrepresentations concerning: (1) the formation of a partnership between Quintero and Tamrakar; (2) Defendant

Anup Tamrakar's formation of a limited liability company; and (3) Quintero's ownership in the same." October 22 Order at ¶ 1(b). That order reflected the Court's determinations that, as a matter of law, Plaintiffs knew or reasonably should have known of any fraud claims predicated on misrepresentations concerning the formation of Urban LLC no later than November 2015, and likewise knew or reasonably should have known of any fraud claims predicated on misrepresentations of Quintero's status as a member, including his rights concerning the books, records, and profits from Urban LLC, no later than 2016. Those determinations were based on uncontroverted evidence—primarily, the testimony of Quintero, himself—along with other undisputed and uncontroverted facts in the record:

- In November 2015, Quintero's purported "initial contribution" to the alleged Urban partnership was deposited into a bank account for Urban LLC, a bank account to which Quintero had access, establishing as a matter of law his knowledge of that entity's existence as a limited liability company—and not a partnership—as of that date. *See* Quintero Aff. at ¶ 13; Pls' Resp. to PSJ Mtn. (Ex. 1 Wells Fargo bank statement excerpts) at pp. 112-15

(reflecting $10,000 deposit on November 2, 2015 and identifying account holder as "Urban Infraconstruction LLC").

- The obligations Quintero contends Tamrakar undertook as part of their alleged partnership agreement were already failing to materialize both before and shortly after Quintero deposited money into the Urban LLC bank account in November 2015. Specifically, Tamrakar did not quit his full-time job to focus on the alleged partnership or contribute the $20,000 he allegedly promised in the beginning. *See* Quintero Aff. at ¶¶ 4, 8, 12, 13; Pls' Pet. at ¶¶ 13-15.

- According to Plaintiffs' own pleadings, Tamrakar had already "changed" the alleged terms of their agreement, unilaterally, prior to Amador's exit from the business. Pls' Pet. at ¶ 15; *see also* Pls' Pet. at ¶ 10, n. 1 (pleading that Amador exited the business within approximately the first six months of its existence due to "dissatisf[action]").

- Quintero began voicing concerns to Tamrakar as early as 2016 about not being treated as a partner, not receiving profits, and not being given access to information about profits, losses, or specific

project revenue. *See* Defs' PSJ Mtn. (Ex. 2 Quintero Dep. at pp. 56-62).

- Quintero never—over the course of almost nine years—received any tax documents regarding Urban LLC. *See* Quintero Aff. at ¶ 42.

On these and other undisputed and uncontroverted facts, taking Quintero's testimony as true, the Court concludes that—as a matter of law—Quintero knew or should have known of his claims no later than 2016, and certainly before 2021 (four years before suit was filed in 2025), rendering them time-barred.

¶27 Plaintiffs' arguments concerning application of a discovery rule and fraudulent concealment were, and remain, unavailing. Because Quintero knew of, or should have discovered, the alleged fraud through reasonable diligence no later than 2016, any alleged subsequent fraudulent concealment is irrelevant. *See Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57-59 (Tex. 2015); *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 203 (Tex. 2011); *see also Valdez v. Hollenbeck*, 465 S.W.3d 217, 229-30 (Tex. 2015) (explaining discovery rule applies "to injuries that are both inherently undiscoverable and objectively verifiable"). Neither theory extends

limitations where a plaintiff knows, or through reasonable diligence should have known, of the alleged harm from the outset. *See Hooks*, 457 S.W.3d at 57-59; *Emerald Oil*, 348 S.W.3d at 203 (declining to reach discovery rule or fraudulent concealment based on owners' actual knowledge of claims more than two years before filing suit).

¶28   Here, again, the record is clear that Quintero knew Tamrakar had not performed his alleged promises to quit his job and contribute $20,000 to the business, knew that Urban LLC had been formed, knew that he was depositing money into a bank account owned by Urban LLC, and knew that Tamrakar was allegedly "changing" the terms of their partnership, prompting Amador's exit. *See* ¶ 26, *supra.* And he knew all of those things by 2016. His knowledge in fact prompted him to question why he was not being treated like a partner or receiving appropriate profit distributions. *See* Defs' PSJ Mtn. (Ex. 2 Quintero Dep. at pp. 56-62). His claims, then, cannot be saved by the discovery rule or allegations of subsequent fraudulent concealment. *See Hooks*, 457 S.W.3d at 59 (holding actual knowledge of harmful conduct triggers limitations period regardless of any fraudulent concealment (citing *Emerald Oil*, 348 S.W.3d at 209)).

¶ 29   On such a record, the Court concluded, and still concludes, that Defendants were entitled to summary judgment on limitations grounds. For clarification of the scope of that ruling, the Court ORDERS summary judgment in favor of Defendants on Plaintiffs' fraud claims relating to Urban LLC; Plaintiffs' fraud claims concerning the business of ATS remain pending.

**B.      Unjust Enrichment**

¶30    Plaintiffs also pleaded in the alternative that Quintero is entitled to damages under the doctrine of unjust enrichment. While Defendants' original summary judgment motion sought to attack all of Plaintiffs' claims, Defendants failed to specifically address the two-year statute applicable to Plaintiffs' unjust enrichment claim *(see generally* Defs' PSJ Mtn.; *see also Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007) (stating that "two-year limitations period applies to unjust enrichment claims")); consequently, the Court asked the parties to address it under Rule 166. *See* Defs' R. 166 Brief at p. 15. The Court finds this claim time-barred.

¶31    A party seeking to recover under the theory of unjust enrichment must prove that another has "obtained a benefit . . . by fraud, duress, or the taking of an undue advantage." *Heldenfels Brothers, Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). In this case, Plaintiffs' unjust

enrichment claims fail for the same reason that his fraud claims fail. *See* Part III(A), *supra.*

¶32　Plaintiffs brought this claim as an alternative theory in the event (as has occurred here) that Quintero is found not to be a member of Urban LLC. The relevant facts are the same for this theory as for fraud; the record remains the same concerning Quintero's knowledge of Urban LLC's existence, Tamrakar's failure to fulfill his alleged promises and his unilateral changing of the terms of their alleged partnership, and the like. *See* ¶ 26, *supra.* Accordingly, Plaintiffs' alleged injuries were known, or should have been known, to Plaintiffs more than two years before suit was filed in 2025. Accordingly, the Court ORDERS judgment as a matter of law in favor of Defendants on Plaintiffs' alternative theory of unjust enrichment.

## IV.　Defendants' Counterclaim for Declaratory Judgment

¶33　Defendants' counterclaim for declaratory judgment fails as a matter of law. "[A] defendant may not bring a declaratory-judgment counterclaim that merely mirrors or repackages defenses to the plaintiff's claims." *CRS Mechanical v. Norfolk Cold Storage*, 2025 Tex. Bus. 46, ¶ 9 (8th Div. 2025) (mem. op.). That is precisely the case here. Quintero sought declarations that he was an equal partner in the Urban partnership and related

declarations. *See* Pls' Pet. at ¶ 31. Defendants seek mirror image declarations: that Urban LLC is a limited liability company, that Plaintiff Quintero is not a member of Urban LLC, and related declarations. *See* Defs' First Am. Counterclaim at ¶ 21.

¶34 "A DJA counterclaim is permissible only if it has greater ramifications than the issues already before the court. A counterclaim has greater ramifications if it seeks affirmative relief." *CRS* Mechanical, 2025 Tex. Bus. 46, at ¶ 10 (internal citation omitted). Defendants' failure to seek affirmative relief or to seek a declaration of rights beyond the scope of the issues already raised by Plaintiffs' affirmative claims renders Defendants' counterclaim superfluous and impermissible. The Court thus ORDERS judgment as a matter of law in favor of Plaintiffs on Defendants' claim for declaratory relief.

## V. Order Granting Judgment as a Matter of Law

¶35 IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiffs take nothing by their claims for declaratory relief, for demand for accounting and inspection of books and records of Urban LLC, for breach of contract against Defendants concerning Urban LLC or an alleged

partnership agreement governing Urban LLC, and for fraud and unjust enrichment for claims relating to Urban LLC.

¶36 IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants take nothing by their claims for declaratory relief.

¶37 Plaintiffs' claims for breach of contract, breach of fiduciary duty, and fraud relating to the business of ATS and alternative claim for quantum meruit and Defendants' claim for conversion remain pending and will proceed to jury trial as set.

ANDREA K. BOURESSA
Judge of the Texas Business Court,
First Division

SIGNED ON: January 26, 2026.